NO. 07-03-0266-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 15, 2004
_____

ANGELIA G. STONE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-437,926; HON. JIM BOB DARNELL, PRESIDING
_____

Before JOHNSON, C.J.  and QUINN and CAMPBELL, JJ.

Appellant, Angelia G. Stone, was convicted upon her plea of guilty for possessing a controlled substance (methamphetamine) in an amount of less than one gram.  She contends on appeal that the trial court erred in failing to grant her motion to suppress as the result of her purportedly illegal detention and the search of her purse.  We affirm the judgment of the trial court.

### *Background*

On August 31, 2001, Officer Jeff Ashburn stopped a vehicle in which appellant was a passenger for failure to have an inspection certificate.  Ashburn asked Jodi Wynn, the

driver, to have a seat in his car while he wrote out a ticket. He then asked Wynn for permission to search her vehicle, which she granted. Before initiating the search, however, he asked appellant to step out of the vehicle, and asked both Wynn and appellant to empty their pockets. Appellant complied. Thereafter, the officer began to observe her and saw needle tracks, marks, and scars on both of appellant's arms from the wrist to the elbow. Appellant was then asked if she used methamphetamine, and she replied that she had used some three days earlier. Ashburn then observed appellant's purse lying open on the passenger side of the car and saw a purple Crown Royal bag in the purse. Based on having found narcotics and drug paraphernalia in Crown Royal bags on many occasions in the past, he removed the bag and searched it. Therein, he found a device with a spoon and a white powdery substance on it that he "believed" was methamphetamine. Appellant was then arrested.

### Motion to Suppress

Appellant argues in two issues that the search of her purse was an illegal search and seizure in violation of the federal and state constitutions.[1] We review the trial court's ruling on a motion to suppress under the standard announced in *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). In doing so, we give almost total deference to the trial court's findings of historical fact and review *de novo* its application of the law to the facts. *Id.* at 89.

---

[1]The Fourth Amendment to the federal constitution and article I, §9 of the Texas Constitution are the same in material aspects but are to be construed independently. *Richardson v. State,* 865 S.W.2d 944, 948 (Tex. Crim. App. 1993); *Uresti v. State,* 98 S.W.3d 321, 329 (Tex. App.--Houston [1st Dist.] 2003, no pet.)

*Standing*

We first address the issue of appellant's standing to contest the search. The State suggests that she had none. We disagree.

To have standing to contest a search, a defendant must show not only that he had a subjective expectation of privacy, exhibited by measures taken to protect the privacy of the property in question, but also that the expectation was one that society was or is prepared to recognize as reasonable. *Jackson v. State,* 745 S.W.2d 4, 7-8 (Tex. Crim. App. 1988), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Pennywell v. State,* 84 S.W.3d 841, 844 (Tex. App.–Houston [1ˢᵗ Dist.] 2002), *remanded on other grounds,* 125 S.W.3d 472 (Tex. Crim. App. 2003). Next, a passenger in a vehicle generally has no standing to contest the search of a vehicle. *See Hughes v. State,* 24 S.W.3d 833, 838 (Tex. Crim. App.), *cert. denied,* 531 U.S. 980, 121 S.Ct. 430, 148 L.Ed.2d 438 (2000) (holding that the defendant had no possessory interest in the vehicle itself or the items seized from it and therefore had no standing to challenge the search). However, he can challenge the search if it resulted from an infringement of his rights. *Henson v. State,* 915 S.W.2d 186, 193 (Tex. App.–Corpus Christi 1996, no pet.).

In this instance, appellant testified that the purse belonged to her, and the officer testified that he recognized that the purse was appellant's. Thus, she had a possessory interest in it and its contents. *See May v. State,* 582 S.W.2d 848, 852 (Tex. Crim. App. 1979) (holding that consent of the passenger to search the vehicle which belonged to his parents did not extend to a lunch box which the officer knew belonged to the defendant). Moreover, a general expectation of privacy in a purse is reasonable because it is intended as a repository of personal effects. *Wilson v. State,* 99 S.W.3d 767, 770 (Tex. App.–

3

Houston [14th Dist.] 2003, pet. ref'd); *see also Coronado v. State,* 835 S.W.2d 636, 640 (Tex. Crim. App. 1992) (holding that students have a high expectation of privacy in a purse); *Dawson v. State,* 868 S.W.2d 363, 370 (Tex. App.–Dallas 1993, pet. ref'd) (holding that a purse is an item in which most women carry personal items and cash and  the fact that the defendant stored her purse in her locker and placed a lock on the locker is evidence she intended to exclude others from the locker).  Thus, while we agree with the State that appellant had no privacy interest in the vehicle, she not only had one in her purse but also had standing to challenge its search.

*Legality of Search*

Now we turn to the legitimacy of the search itself.  Appellant argued that the officer acted illegitimately because the purpose for the original stop had ended and no other basis warranted continuation of the detention or the ensuing search of the purse.  We disagree.

Once the purpose of a traffic stop has been effectuated, the officer may ask the driver if he possesses illegal contraband and solicit voluntary consent  to search the vehicle.  *Strauss v. State,* 121 S.W.3d 486, 491 (Tex. App.–Amarillo 2003, pet. ref'd). Merely requesting such consent does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask.  *James v. State,* 102 S.W.3d 162, 173 (Tex. App.–Fort Worth 2003, pet. ref'd); *Leach v. State,* 35 S.W.3d 232, 235 (Tex. App.–Austin 2000, no pet.).  Nor does the encounter become a further detention simply due to the request for permission to search.  *Vargas v. State,* 18 S.W.3d 247, 252-53 (Tex. App.–Waco 2000, pet. ref'd).  Further, the officer is not required to inform the occupants that they are free to leave.  *Id.* at 252 n.1.

4

At bar, the evidence shows that the officer requested permission from the driver to search the vehicle and that consent to do so was voluntarily given. Thus, he was authorized to act upon the consent given him. And, it reasonably falls within the scope of the consent granted by the person in control of the vehicle to ask those in the car to exit it so the search can be conducted.

Next, while the officer did ask both occupants to empty their pockets, the contents of their respective pockets were not in issue here; indeed, the record does not even indicate what the contents were. Rather, it was what the officer saw on the appellant's forearms after she emptied her pockets that caused him to question her further. The garb she wore was such that it allowed him to observe scars and red, scabby needle tracks extending from her wrists to her elbows. Being uncovered, red, scabby and perceivable by the eye, the trial court could have reasonably inferred from the evidence that they were in plain view. *See Walter v. State,* 28 S.W.3d 538, 541-42 (Tex. Crim. App. 2000), *quoting Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), (defining plain view as contraband left in open view and observed by a police officer from a lawful vantage point so that no invasion of a legitimate expectation of privacy has occurred). And, being in plain view, the officer need not have had reasonable suspicion or probable cause to mentally seize what he saw; that is, being in plain view, neither the federal or state constitutions required the officer to ignore, or prevented him from testifying about, the marks even if we were to assume that he had no basis to ask appellant to empty her pockets.[2] So too could it be said that the marks and what they indicated (*i.e.* recent drug

---

[2]Nothing of record suggests that but for the request to empty her pockets, the marks on her bare arms would not have been seen.

use) created reasonable suspicion that criminal activity was afoot and appellant was involved in it. *See Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (defining reasonable suspicion as specific articulable facts when combined with rational inferences from those facts which would lead an officer to reasonably suspect that a particular person has engaged or is or soon will be engaging in criminal activity). Thus, the officer had lawful basis to temporarily detain appellant and ask her questions sufficient to either negate or substantiate that suspicion. *See Davis v. State,* 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (discussing the scope of the investigation that the officer may undertake if reasonable suspicion of criminal activity exists).

Next, in questioning appellant about whether she used methamphetamine, he discovered that she did. This, coupled with the officer's belief (based upon his having seen like marks on "many occasions") that the tracks indicated "recent use" of the drug, the officer's observation of the Crown Royal bag in appellant's open purse, and his knowledge and experience that drugs are often kept in Crown Royal bags[3] constituted facts sufficient to justify the conclusion that drugs were probably in the bag.[4] *See Rojas v. State*, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990) (stating that probable cause to search "exists when

---

[3]*See Jurdi v. State*, 980 S.W.2d 904, 906 (Tex. App.–Fort Worth 1998, pet. ref'd) (wherein methamphetamine and drug paraphernalia was found in a Crown Royal bag); *Hollis v. State*, 971 S.W.2d 653, 655 (Tex. App.–Dallas 1998, pet. ref'd) (wherein the officer found cocaine in a Crown Royal bag and testified that such bags are often used to carry drugs); *Wells v. State*, 968 S.W.2d 483, 484 (Tex. App.–Eastland 1998, pet. ref'd), *cert. denied,* 526 U.S. 1021, 119 S.Ct. 1259, 143 L.Ed.2d 355 (1999) (wherein drug paraphernalia was discovered in a Crown Royal bag); *Rhodes v. State,* 913 S.W.2d 242, 249 (Tex. App.–Fort Worth 1995), *aff'd,* 945 S.W.2d 115 (Tex. Crim. App. 1997) (wherein officers testified that in their experience, Crown Royal bags are frequently used to carry drugs);

[4]Appellant contradicted the officer's testimony that her purse was open and the Royal Crown bag in plain view. This testimony, however, created a question of fact for the trial court to resolve. And, apparently, the trial court resolved it against appellant. We defer to that finding given the applicable standard of review.

6

the facts are sufficient to justify the conclusion that the property which is the object of the search is probably in the area to be searched"). So, the totality of the circumstances would permit a trial court to find that the officer had probable cause (under both the federal and state constitutions) to remove the bag from the purse and search it for drugs.

Accordingly, we 1) conclude that the trial court did not abuse its discretion by denying the motion to suppress, 2) overrule the two issues before us, and 3) affirm the judgment rendered below.

Brian Quinn
Justice

Publish.

7