# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00570-CV

## In the Matter of R. S. W.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
## NO. J-24,543, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

R.S.W., a juvenile, was adjudicated delinquent following his plea of true to possession of marihuana in an amount of two ounces or less. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (West 2003). The marihuana was discovered by a law enforcement officer during a late-night encounter with R.S.W. in a park subject to a dusk-to-dawn curfew. R.S.W. appeals from the district court's denial of his motion to suppress evidence of the marihuana. *See* Tex. Fam. Code Ann. § 56.01(n)(2) (West 2002). In two issues, R.S.W. argues that the district court erred because the officer discovered the marihuana by (1) initiating an illegal investigatory detention and *Terry* frisk[1] founded on the officer's "mere hunch" that R.S.W. was engaged in criminal activity; and (2) exceeding the permissible scope of a *Terry* frisk and conducting a search without probable cause. We will affirm the judgment.

---

[1] *See Terry v. Ohio*, 392 U.S. 1, 23-24 (1968).

**EVIDENCE**

The sole witness at the suppression hearing was Keith Kinnard, Senior Deputy with the Travis County Sheriff's Department. Kinnard described both his experience in law enforcement —he was a twelve-year veteran of the department and served as a field training officer[2]—and his experience with R.S.W. in particular. Kinnard recounted that R.S.W. had been frequently associated with criminal activity and that "[w]e have numerous dealings with [R.S.W.]," to an extent that Kinnard knew R.S.W. and could recognize him on sight. Kinnard also had been to R.S.W.'s house, and explained that R.S.W. lived in an area near Howard Lane that had suffered an "influx of crime," mostly "juvenile related," to a degree that the local municipal utility district had contracted with the sheriff's department "so we could put more people in the area to suppress some of this criminal activity."

During the night of April 17, 2004, another sheriff's deputy, Terry Peterman, had responded to a call involving a group of juveniles, including R.S.W., who were seen smoking marihuana.[3] Peterman contacted Kinnard, who "[b]ecause of the heavy criminal involvement in the area," proceeded to assist Peterman in patrolling the area. The area to be patrolled included three subdivisions near Howard Lane. While Peterman patrolled the area streets in a vehicle, Kinnard began walking a hike-and-bike trail connecting the three subdivisions.

---

[2] As an FTO, Kinnard was entrusted with training new deputies "in how to enforce the laws in the State of Texas and Travis County."

[3] Peterman found a smoking pipe but no marijuana.

2

At approximately 11:30 p.m., Kinnard observed R.S.W. walking along the trail. Kinnard testified that the area was subject to a dusk-to-dawn curfew. He added that the location where he encountered R.S.W. was far from where R.S.W. lived. Kinnard also indicated that the area was not well-lit; it was "very dark." Deputy Kinnard recounted that R.S.W. was wearing an oversized red athletic jersey and a hood—during what Kinnard indicated was a warm evening. Kinnard indicated that such out-of-place attire was commonly worn by juveniles in gangs. He added that gang members frequently carried weapons.

Kinnard asked R.S.W. about "where he's been, where he was going, so forth." R.S.W., Kinnard recounted, was "very surprised to see me," and appeared nervous and was shaking, even though it was not a cold night. R.S.W. had his hands in the oversized jersey. For his safety, Kinnard asked R.S.W. to remove his hands from the jersey, and Kinnard proceeded to "frisk" R.S.W. Kinnard explained that he did so to ensure that R.S.W. did not have a weapon.

Kinnard explained what happened next:

Q: When you frisked him—what happened when you frisked him?

A: Well, when I—when I frisked him—of course, I'm frisking for weapons. And I felt something in his pocket. And I asked him to remove the item from his pocket. And once he started to remove it, then he made a—he tried to hide whatever was in there. I said "what is that?" "It's weed." So he took it out.

Q: So he admitted he had weed?

A: Well, once I seen it, yes, sir.

On redirect examination, Kinnard emphasized that R.S.W. was "asked, and not told" to empty his pockets. After Kinnard asked R.S.W. what was in his pocket and R.S.W. admitted it was marihuana,

3

Kinnard proceeded to arrest R.S.W. and confiscated a small, compact baggy containing what proved to be marihuana.

The district court overruled R.S.W.'s suppression motion and subsequently made findings of fact and conclusions of law. R.S.W. was adjudicated delinquent and placed on probation for six months. This appeal followed.

## DISCUSSION

In two issues on appeal, R.S.W. asserts that his motion to suppress was improperly denied because: (1) R.S.W. was illegally detained based on a "mere hunch" by Officer Kinnard; and (2) the search of R.S.W.'s pocket exceeded the permissible scope of a *Terry* frisk.

### Standard of review

In an appeal of a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing *de novo* the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The district court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may choose to believe or disbelieve any or all of a witness's testimony. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000); *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

A ruling on a motion to suppress in a juvenile case is reviewed using the same bifurcated standard that applies to such motions in adult criminal cases. *See In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002).[4] We review *de novo* the juvenile court's application of the law of search and seizure and probable cause. *See Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). However, we must give almost total deference to the juvenile court's findings of historical fact, especially where the court's findings are based on an evaluation of witness credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. At a suppression hearing, the juvenile court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

We must sustain the court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (quoting *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this case, the district court entered findings of fact and conclusions of law. We give almost total deference to the district court in reviewing findings of fact because the district court is in a better position to evaluate the credibility and

---

[4] Juvenile delinquency proceedings like the present one are quasi-criminal in nature. *See In re J.R.*, 907 S.W.2d 107, 109 (Tex. App.—Austin 1997, no writ). The juvenile is entitled to the same constitutional rights as an adult because the delinquency proceeding seeks to deprive the juvenile of his liberty. *See id*. Evidence illegally seized or obtained is inadmissible in an adjudication hearing. *See* Tex. Fam. Code Ann. § 54.03(e) (West Supp. 2005).

reliability of witnesses. *Guzman*, 955 S.W.2d at 89. However, we review *de novo* the district court's application of law to those facts when the conclusion, such as the existence of reasonable suspicion, does not turn on witness credibility. *Ornelas v. United States*, 517 U.S. 690, 697-98 (1996); *Guzman*, 955 S.W.2d at 87.

**Application**

### *Justification for the* **Terry** *stop*

In his first issue on appeal, R.S.W. asserts that he was detained on nothing more than a "mere hunch." We disagree. The Supreme Court has recognized three distinct types of police - citizen interactions: (1) arrests, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 601, 95 S.Ct. 2254, 45 L. Ed. 2d 416 (1975); (2) brief investigatory stops, which must be supported by reasonable suspicion, *see Terry v. Ohio*, 392 U.S. 1, at 25-26 (1968); and (3) brief encounters between police and citizens, which require no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991). Police may approach and question an individual in a public place without implicating the Fourth Amendment's protections. *United States v. Drayton*, 536 U.S. 194 (2002); *Bostick*, 501 U.S. at 434; *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). Even when law enforcement officers have no basis for suspecting a particular person of wrongdoing, they may ask questions as long as they do not "induce cooperation by coercive means." *Drayton*, 536 U.S. at 201. If a reasonable person would feel free to terminate the encounter, then he has not been seized. *Id*.

Of those three types of encounters, we believe Deputy Kinnard's detention of R.S.W. was nothing more than a brief investigatory stop. An investigatory detention is justified if, based upon the totality of the circumstances, the detaining officer has specific articulable facts, which,

taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). These facts must amount to more than a mere hunch or suspicion. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981). This standard is an objective one—there need only be an objective basis for the stop. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The subjective intent of the officer conducting the stop is irrelevant. *Id*. The burden is on the State to elicit testimony of sufficient facts to create a reasonable suspicion. *Id.*; *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (when defendant shows search or seizure occurred without warrant, burden is on State to show search or seizure was reasonable). We look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

The "totality of the circumstances" analysis requires us to respect the common-sense, reasonable judgments of law enforcement officers, as informed by all surrounding facts and circumstances and the rational inferences and deductions officers may draw from them based on their experience and familiarity with the areas they serve. *See United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *Woods*, 956 S.W.2d at 38 (adopting, as "well reasoned and persuasive," rationale of *Cortez* and *United States v. Sokolow*, 490 U.S. 1, 8 (1989)). Thus, as the Texas Court of Criminal Appeals recently acknowledged, "law enforcement training or experience may factor into a

7

reasonable-suspicion analysis," *Ford*, 158 S.W.3d at 494, and that, viewed through that lens and in full context, otherwise innocuous or innocent facts may indicate criminal conduct. *Woods*, 956 S.W.2d at 38 ("there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion."); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) ("This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.") (internal quotations omitted).

Here, Deputy Kinnard identified numerous objective facts that could have led him to reasonably conclude that R.S.W. had been, or soon would be, engaged in criminal activity. These included Kinnard's personal knowledge of R.S.W.'s history of criminal activity, the time of night and location where Kinnard encountered R.S.W., the apparent indicia that R.S.W. might be involved in a gang and would be more likely to be carrying a weapon, the report that R.S.W. had been involved in criminal activity earlier that evening, and the fact that R.S.W. had his arms inside his shirt. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (stating that stop occurring in "high crime area" is relevant consideration in *Terry* analysis); *Ford*, 158 S.W.3d at 494 (law enforcement training or experience may factor into reasonable-suspicion analysis); *Delk v. State*, 855 S.W.2d 700, 710 (Tex. Crim. App. 1993) (notification that individual has been involved in criminal activity can provide basis for *Terry* stop); *State v. Bryant*, 161 S.W.3d 758, 762 (Tex. App.—Fort Worth 2005, no pet.) (time of night and area's crime rate supported a reasonable suspicion that defendant was, or would soon be, engaged in criminal activity); *Alexander v. State*, 879 S.W.2d 338, 342 (Tex.

8

App.—Houston [14th Dist.] 1994, pet. ref'd) (being in park hours past curfew and acting as if one were trying to hide something are facts sufficient to constitute reasonable suspicion). Moreover, upon encountering R.S.W., Kinnard was permitted to ask him, with or without reasonable suspicion, about what he was doing and where he was going. *See Florida v. Royer*, 460 U.S. 491, 497-502 (1983); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). The nervousness and shaking that R.S.W. exhibited in response to this inquiry provided Kinnard an additional reasonable basis for stopping R.S.W. *See Balentine*, 71 S.W.3d at 769.[5] In sum, Kinnard's suspicion that R.S.W. had been or soon would be engaged in criminal activity was based on far more than the "mere hunch" that R.S.W. alleges. We overrule R.S.W.'s first issue on appeal.

### *Scope of the* **Terry** *frisk*

In his second issue on appeal, R.S.W. asserts that Kinnard's pat-down of his pocket exceeded the permissible scope of any purported *Terry* frisk for weapons. We disagree. When a person is stopped based on suspicious conduct, the officer may conduct a pat-down search of the person for weapons when the officer is justified in believing that the person may be armed and

---

[5] In *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002), the officer arrived on the scene of a shots-fired call. *Id.* He observed the defendant walking across the street nearby the complainant's residence. *Id.* It was approximately 2:30 in the morning in what the officer described as a residential, low-traffic area. *Id.* The defendant appeared nervous and was walking briskly away from the reported direction of the gunfire, while constantly looking back over his shoulder in the officer's direction. *Id.* The officer's detention of the defendant was found to have been justified. *Id.*

dangerous. *See Terry*, 392 U.S. at 23-24 (1968). If, while lawfully conducting such a search, the officer feels "an object whose contour or mass makes its identity [as contraband] immediately apparent . . . its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). But this "plain feel" exception does not authorize officers to squeeze, slide, and otherwise manipulate the contents of a defendant's pocket—particularly if the officer already knows the pocket does not contain a weapon. *Id*. at 378. If the search exceeds that necessary to determine if the suspect is armed, the fruits of the search will be suppressed. *See id*. at 379.

Kinnard testified that he conducted the pat-down for his safety. He knew that R.S.W. had a history of criminal activity and had possessed contraband in the past. In addition, R.S.W. appeared nervous and was wearing what appeared to be gang attire. Kinnard testified that, based on his twelve years of experience, juveniles associated with gangs were more likely to carry weapons. This evidence supports a finding that Kinnard was justified in performing the pat-down to make sure that R.S.W. was not armed.

R.S.W. equates Kinnard's pat-down to the circumstances in *Dickerson*, 508 U.S. at 369, in which the officer felt a lump in the defendant's pocket, examined the lump with his fingers, and then reached into the pocket to remove its contents. *Id*. The Supreme Court held that such a search exceeded the permissible scope of a *Terry* frisk. *Id*. at 378. This case is distinguishable from *Dickerson*. Kinnard did not search R.S.W.'s pocket, but merely patted it down externally to feel for weapons. When Kinnard felt an unknown object in R.S.W.'s pocket, he stopped his pat-down;

10

unlike the officer in *Dickerson*, Kinnard did not look or reach inside the pocket to identify or pull the object out, nor did he squeeze, slide or otherwise manipulate the pocket's contents.

### Voluntary search

R.S.W. also contends that once Deputy Kinnard determined that R.S.W. did not possess a weapon, he acted improperly in questioning R.S.W. about what was in his pocket and in obtaining the marijuana. We disagree. Once the purpose of a stop has been effectuated, the officer may ask the suspect if he possesses illegal contraband and solicit voluntary consent to search. *Stone v. State*, 147 S.W.3d 657, 660 (Tex. App.—Amarillo 2004, pet. ref'd). Merely requesting such consent does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask. *James v. State*, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref'd); *Leach v. State*, 35 S.W.3d 232, 235 (Tex. App.—Austin 2000, no pet.). Nor does the encounter become a further detention simply due to the request for permission to search. *Vargas v. State*, 18 S.W.3d 247, 252-53 (Tex. App.—Waco 2000, pet. ref'd).

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Voluntariness is a question of fact to be determined from all the circumstances. *Id.* The consent must not be coerced, by explicit or implicit means, by implied threat or covert force. *Id*. (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). The consent must be positive and unequivocal. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). Consent is not established by "showing no more than acquiescence to a claim of lawful authority." *Carmouche*, 10 S.W.3d at 331 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)). The State must

11

show by clear and convincing evidence that the consent was freely given. *Id.* (citing *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997)).

We conclude that clear and convincing evidence supports the district court's conclusion that R.S.W.'s consent was freely given. Kinnard consistently testified that he asked R.S.W. to remove the unknown item from his pocket—Kinnard did not tell R.S.W. to do so. Furthermore, Kinnard showed no force when asking R.S.W. to remove the item, nor did he repeatedly ask or insist that R.S.W. remove the item—he only asked once, and R.S.W. complied. There is also no evidence in the record that R.S.W.'s consent was a product of force, threat, or coercion. The events here, rather, are consistent with those repeatedly held by Texas courts to constitute voluntary, consensual searches. *See*, *e.g.*, *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000) ("[t]estimony by law enforcement officers that no coercion was involved in obtaining the consent is evidence of the consent's voluntary nature"); *Cleveland v. State*, 177 S.W.3d 374, 2005 Tex. App. LEXIS 2726, \*17 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (search of residence); *Lerma v. State*, 172 S.W.3d 219, 227 (Tex. App.—Corpus Christi 2005, pet. dism'd) (search of automobile); *Levi v. State*, 147 S.W.3d 541, 545 (Tex. App.—Waco 2004, pet. ref'd) (search of automobile); *In re D.G.*, 96 S.W.3d 465, 469 (Tex. App.—Austin 2002, no pet.) (search of juvenile). In sum, all that the record demonstrates is that Kinnard *asked* R.S.W. to remove the item from his pocket and R.S.W. complied. If R.S.W. wished to show that his compliance with Kinnard's request was, in fact, not voluntary or was merely acquiescence to official authority, it was incumbent on R.S.W. to develop a record that could support such an assertion. This record does not.

We overrule R.S.W.'s second issue on appeal.

12

## CONCLUSION

The evidence of marihuana possession admitted against R.S.W. was not a product of an illegal search and seizure. We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 9, 2006