Affirmed and Memorandum Opinion filed November 6, 2007








Affirmed and Memorandum Opinion filed November 6, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00889-CR

____________

 

ROBERT EDWARD COLLINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 1059194

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Robert Edward Collins, appeals from his
conviction for possession with intent to deliver of between 4 and 200 grams of
cocaine.  After the trial court denied appellant=s motion to
suppress, appellant pleaded guilty, and the trial court found him guilty and
sentenced him to seven years confinement, probated for seven years, and a $500
fine.  In two issues, appellant contends that the trial court erred in denying
his motion to suppress because the arresting officer (1) did not have
reasonable suspicion to conduct an investigative detention, and (2) exceeded
the scope of a search permitted during an investigative detention and did not
have probable cause for such search.  We affirm.








Background

At the motion to suppress hearing, Sergeant Michael
Tollison of the Jacinto City Police Department testified that on February 25,
2006, at approximately 2:35 a.m., he was patrolling an area of convenience
stores subject to robberies.  He observed a vehicle with two people inside of
it parked at gasoline pumps at one of the convenience stores.  The occupants
were just sitting there, and this appeared suspicious to him because they were
not filling their car with gas and seemed to have no connection with the
store.  When he approached them on foot, Athey became
startled and appeared to be nervous.@  He identified
the driver as Nathan Lee Solley, and the passenger as appellant.  When he
approached, he asked Solley what they were doing; both occupants answered that
they were pumping gas, which they were not.  While he was talking to them, they
still appeared nervous, and their hands were trembling.

Tollison asked Solley to step out of the vehicle; he then
asked Solley for consent to search the vehicle, to which Solley replied Ago ahead.@  He further asked
Solley to stay with the other officer at the scene, and he asked appellant to
step out of the vehicle.  As appellant was exiting, Aclear plastic
baggies fell to the ground and he kicked them underneath the car.@  The Abaggies@ fell from
appellant=s clothing.  Tollison retrieved the baggies; there was
nothing inside them.  He testified that based on his experience, the baggies
were of a type narcotics suspects use to hold marijuana, cocaine, or LSD and to
hide it on their bodies.  He explained that the baggies in question differ from
sandwich bags because they are A[a] little bit thicker, smaller@ and square.

He asked Solley and appellant to take off their shoes. 
Appellant complied, and when he removed his shoes, Tollison saw a plastic
baggie in appellant=s left shoe containing a green leafy
substance.  Tollison retrieved the baggie, and based on his experience, he
determined that it looked and smelled like marijuana.  His field test on the
substance was positive for marijuana.  He then placed appellant under arrest.








During booking at a police substation, while Tollison
performed a search of appellant=s clothing, a plastic baggie holding
several smaller baggies fell out of appellant=s underwear.  The
smaller bags contained a white powdery residue that was determined to be
cocaine weighing 5.5 grams.

On cross-examination, Tollison acknowledged that plastic
bags of that type do have other uses and are not made solely for the purpose of
carrying narcotics.  He also admitted that he did not check inside the
convenience store to determine whether anyone with Solley and appellant may
have been in the store.  He did not inquire with anyone inside the store as to
whether Solley or appellant had been inside to buy anything.

After the trial court denied the motion to suppress,
appellant pleaded guilty, and the trial court found him guilty.  The trial
court subsequently certified appellant=s right to appeal.

Standards of Review

We review a trial court=s ruling on a
motion to suppress evidence under an abuse of discretion standard.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a suppression
hearing, the trial judge is the sole fact finder.  Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993).  We give almost total deference to the
trial court=s determination of historical facts when supported by
the record, particularly if the findings turn on witness credibility and
demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The same deference is accorded to
determinations of mixed questions of law and fact if their resolution depends
upon witness credibility and demeanor.  Ross, 32 S.W.3d at 856.  Issues
that present purely legal questions are considered under a de novo standard.  Id. 
We will sustain the trial court=s ruling if it is reasonably supported by
the record and is correct on any theory of law applicable to the case.  Villarreal,
935 S.W.2d at 138.








There are three basic categories of interaction between
police officers and citizens:  encounters, investigative detentions, and
arrests.  Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). 
An encounter is a friendly exchange of pleasantries or mutually useful
information.  Id.  (citing Terry v. Ohio, 392 U.S. 1 (1968)).  In
an encounter, a police officer is not required to possess any particular level
of suspicion, because the citizen is under no compulsion to remain.  Id. 
In an investigative detention (also known as a temporary detention or ATerry‑stop@), however, the
officer must be able to articulate specific facts that, in light of his
experience and personal knowledge, together with inferences from those facts,
reasonably warrant the intrusion on the freedom of the citizen stopped.  Id. 
(citing Terry, 392 U.S. at 21).  In other words, to justify a detention,
there must be a reasonable suspicion by the officer that some unusual activity
is or has occurred, that the detained person is connected with the activity,
and that the unusual activity is related to the commission of a crime.  Id. 
An investigative detention is a seizure under which the citizen is not free to
leave, at least for some period of time.  Id.  An arrest imposes the
highest level of intrusion and thus requires the highest level of suspicion, or
Aprobable cause,@ that the citizen
involved has engaged in or is engaging in criminal activity.  Id.
(citing Henry v. United States, 361 U.S. 98, 103 (1959)).  The seizure
involved in an arrest will generally not be brief.  Id.  The key
questions in determining whether an interaction is an encounter or a detention
are whether a reasonable person would have believed he or she was free to leave
and whether they actually yielded to the officer=s show of
authority.  Id.  The key issue in determining whether an interaction
constitutes a detention or an arrest is whether a reasonable person would have
believed the seizure was to be brief.  It is also important to note that these
differing levels of interaction often flow from one into the next, and
sometimes the lines between them may blur in any given transaction.  See id. 
A[W]hat may begin
as a consensual encounter can readily become an investigative detention, which
may evolve into an arrest.@  Id.








Investigative Detention

In his first issue, appellant contends that the trial court
erred in denying his motion to suppress because Officer Tollison did not
possess the requisite reasonable suspicion to initiate an investigative
detention.[1] 
Specifically, appellant contends that what began as a casual encounter became
an investigative detention when Tollison ordered Solley and appellant out of
the vehicle.  At least in regards to appellant, we disagree.  To begin with,
the record does not reflect that Tollison ordered either man out of the
vehicle.  Tollison testified that he asked Solley to step out of the vehicle
and then asked Solley for permission to search the vehicle.  Only after Solley
consented to the vehicle search did Tollison ask appellant to get out of the
vehicle, apparently so that he (Tollison) could then search the vehicle. 
Whether Tollison acted properly in initially asking Solley to exit the vehicle
is not a matter about which appellant can complain.  See Kothe v. State,
152 S.W.3d 54, 59 (Tex. Crim. App. 2004) (A[A defendant] has
no standing to complain about the invasion of someone else=s personal rights.@) (citing
United States v. Salvucci, 448 U.S. 83, 84‑85 (1980)); Tucker v.
State, 183 S.W.3d 501, 506-07  (Tex. App.CFort Worth 2005,
no pet.) (discussing Kothe).  The most important point here is that
there is no evidence in the record that Tollison asked appellant to exit for
any reason other than to conduct the driver authorized search.  Furthermore,
there is no evidence that Tollison told appellant not to go anywhere or
restricted his movement in any other way.








In Stone v. State, the Amarillo Court of Appeals
held that no detention occurred when a passenger was asked to vacate a vehicle
in order for a consensual search to proceed, stating Ait reasonably
falls within the scope of the consent granted by the person in control of the
vehicle to ask those in the car to exit it so the search can be conducted.@  147 S.W.3d 657,
660 (Tex. App.CAmarillo 2004, pet. ref=d).[2] 
We agree with our sister court=s reasoning.  Accordingly, the trial court
could have reasonably determined that a detention did not occur when Tollison
asked appellant to step out of the vehicle; thus, a reasonable suspicion was
not required for Tollison to make that request.

Additionally, even assuming that Tollison=s request for
appellant to step out of the vehicle constituted an investigative detention,
Tollison articulated specific facts thatCwhen combined with
rational inferences therefromCjustified the temporary investigative
detention.  See Francis, 922 S.W.2d at 178.  Tollison testified that at
approximately 2:35 a.m., he observed appellant parked in a vehicle at a
convenience store in an area where convenience stores were subject to
robberies.  Appellant and the driver of the vehicle were just sitting there. 
This situation appeared suspicious to Tollison because they were not filling
the car with gas and, indeed, seemed to have no connection with the store. 
When he approached them on foot, Athey became
startled and appeared to be nervous.@  He asked the driver
what they were doing, and both occupants answered that they were pumping gas,
which they were not.  While he was talking to them, both continued to appear
nervous, and their hands were trembling.








Nervousness alone does not constitute grounds to reasonably
suspect criminal activity is afoot.  Munera v. State, 965 S.W.2d 523,
531 (Tex. App.CHouston [14th Dist.] 1997, pet. refd.).  Likewise, a
person=s mere presence in
a high crime area is insufficient to create reasonable suspicion justifying a
search.  Gurrola v. State, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994). 
And, certainly, simply sitting in a parked car at 2:35 a.m. is not sufficient. 
However, we find that the totality of the circumstances hereCincluding
nervousness and trembling, presence in a high crime area (specifically presence
in front of a convenience store in an area known for convenience store robberies),
sitting in a parked car in a public place at 2:35 a.m., and giving inaccurate
information to a police officerCconstituted sufficient articulation of
specific facts to support the trial court=s determination to
validate the temporary investigative detention.  See, e.g., Crooks
v. State, 821 S.W.2d 666, 668-69 (Tex. App.CHouston [14th
Dist.] 1991, no pet.) (holding that validity of investigative detention was
supported by evidence that defendant was observed at night sitting in a vehicle
in an empty parking lot in a high crime area and acted Anervous and
jittery@ when he saw
police officer).  Accordingly, we overrule appellant=s first issue.

Search &Seizure

In his second issue, appellant contends that the trial
court erred in denying his motion to suppress because:  (1) Tollison=s search of
appellant=s shoes, in which contraband was discovered, exceeded
the permissible scope of a search incident to an investigative detention, and
(2) Tollison did not otherwise have probable cause to search appellant=s shoes.  We find
both of appellant=s arguments to be without merit. 
Regarding the first argument, there is no evidence in the record that Tollison
conducted a pat-down search for weapons incident to an investigative detention;
thus, the law regarding such searches is not implicated here.  See generally
Terry, 392 U.S. at 29-30 (authorizing a pat-down search for weapons when
the officer is justified in believing a detainee may be armed and dangerous); Balentine
v. State, 71 S.W.3d 763, 769-70 (Tex. Crim. App. 2002) (discussing Terry).








Regarding appellant=s second argument,
although appellant states that Tollison Atold both young
men to take off their shoes,@ in his testimony, Tollison stated only
that he asked appellant to remove his shoes, and appellant complied.[3] 
Appellant neither asserts nor cites evidence suggesting that his removal of his
shoes was anything other than consensual, or that the consent was the product
of any express or implied duress or coercion.  Generally, in the absence of
duress or coercion, when a person voluntarily and expressly  consents to a
request to search, there is no need for the requesting law enforcement officer
to have probable cause for the search.  Schneckloth v. Bustamonte, 412
U.S. 218, 219-23 (1973); Flores v. State, 172 S.W.3d 742, 749 (Tex. App.CHouston [14th
Dist.] 2005, no pet.); see also Champenois v. State, 874 S.W.2d 254, 258
(Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (holding that
defendant=s consent to search his shoes was voluntarily given). 
Accordingly, appellant=s second issue is overruled.

We affirm the trial court=s judgment.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 6, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The State initially argues in its brief that
appellant=s issues on appeal do not comport with the issues he
raised in the trial court, citing Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990).  Specifically, while on appeal appellant argues that
the search and seizure was illegal under both the United States Constitution
and the Texas Constitution, in the trial court, appellant only referenced Texas
Constitutional provisions.  See generally U.S. Const. amend. IV; Tex.
Const. art. I, ' 9.  Although the State is accurate in pointing out
this discrepancy in appellant=s arguments, it
is a highly technical point.  The State does not identify any way in which the
analysis of appellant=s issues would be substantively different if
undertaken pursuant to the Texas Constitution as opposed to the United States
Constitution, and we are aware of no such distinction in this case.  See,
e.g., Rothenberg v. State, 176 S.W.3d 53, 57-61 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d) (discussing Crittenden v. State, 899 S.W.2d
668 (Tex. Crim. App. 1995), and Johnson v. State, 912 S.W.2d 227 (Tex.
Crim. App. 1995)).  Consequently, in the interests of justice, we will address
the substance of appellant=s arguments.





[2]  Appellant cites Ebarb v. State, 598 S.W.2d
842 (Tex. Crim. App. 1979), for the proposition that a detention occurred as
soon as Tollison ordered appellant out of the vehicle.  As discussed above, the
evidence demonstrates that Tollison asked appellant to vacate the vehicle and
did not order him out.  Furthermore, Ebarb is distinguishable because in
that case (1) the officers were acting on a tip that Mrs. Ebarb had a handgun
in her vehicle; (2) the officers followed the vehicle until it stopped in a
private driveway belonging to Mrs. Ebarb=s
son, and (3) the vehicle belonged to the passenger, Mrs. Ebarb, who exited
after being asked if the officers could search the vehicle.  Id. at
843-44.  Here, Officer Tollison merely came upon Solley and appellant in a
parked vehicle and asked appellant to exit only after obtaining permission to
search from the vehicle=s owner, Solley.  Thus, the facts of the present case
are more similar to those in Stone than those of Ebarb.





[3]  Indeed, elsewhere in his brief, appellant states
that Tollison Aasked@ appellant to
take off his shoes.