02-10-364-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00364-CR

 

 


 
 
 Stephanie Baxter
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 367th
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Following
the denial of her motion to suppress, Appellant Stephanie Baxter entered a plea
of guilty to the possession of a controlled substance, to-wit: methamphetamine,
in an amount of less than one gram.[2]  In three points, Baxter
contends that the trial court erred by finding that the arresting officer
lawfully questioned her during a traffic stop and by failing to suppress the
evidence found during that seizure.  We will affirm.

II.  Background

After
being arrested on July 3, 2009, during a traffic stop of the vehicle in which she
was a passenger, Baxter filed a motion to suppress evidence of methamphetamine
and drug paraphernalia found on her person.  At the suppression hearing, Texas
Department of Public Safety Trooper Steven Quan testified for the State.  Quan
said that he had been trained in various codes and criminal interdiction.  Quan
testified that his duties included criminal interdiction and traffic law
enforcement.  Quan recalled the early morning of July 3, 2009.  He averred that
on that day, he was training a new trooper and doing traffic enforcement.  Quan
said that at roughly 1:07 a.m., he was in a marked cruiser sitting stationary
on I-35E between Lewisville and Sanger.  As he ran his rear radar, Quan saw two
vehicles traveling northbound in the right-hand lane.  Quan said that one of
the vehicles “swerved pretty hard to the left lane, and [his] first thought was
that that car is trying to hide behind the -- the lead car.”  Quan testified
that as the vehicle swerved left, it began to overtake the other vehicle.

After
confirming that the vehicle was exceeding the speed limit, Quan initiated a
traffic stop.  Quan averred, and the video of the stop confirms, that when he
initiated the stop, his in-car video recorder initiated and captured the
encounter on video.  According to Quan, the vehicle pulled immediately over to
the right shoulder and came to a stop.

          Quan
said that he approached the vehicle on the passenger side for safety reasons. 
Although he could not recall whether the window was initially up or down, he
said that he “looked at the driver, told him why he was being stopped, . . .
and asked for his [driver] license.”  Quan testified that the trooper trainee
was near him as he approached.  Quan said that Baxter was sitting in the front
passenger seat, and he identified Baxter in the courtroom.  Quan said that as
he initiated a conversation with the driver, Baxter began to answer his
questions.  Quan testified that it is unusual for a passenger to answer his
questions and that it struck him as suspicious because he was looking at and
directing his questions to the driver of the vehicle.  Quan said that he
averaged between “80 to 100 . . . traffic stops a week, and through
[his] training and experience, most of the time when [he] conduct[ed his]
business with the driver, the passengers [remained silent].”

          According
to Quan, not only did Baxter answer his questions, but her answers were
unusually detailed and long.  Quan also said that as Baxter answered the
questions, he looked at the driver, and that the driver had an “extremely
scared look on his face.”  Because of Baxter’s behavior and the driver’s
appearance, Quan asked Baxter for identification.  Baxter stated that she had not
renewed her driver license once it had expired.  Quan questioned Baxter about
whether she had a criminal record, and he specifically asked her, “[W]hen was
the last time she [had done] any kind of drugs.”  By Quan’s account, Baxter’s
answer was vague, so he asked again.  Quan said that Baxter’s answer changed. 
Quan testified that based on the unusual manner in which the vehicle swerved
and accelerated, the unusually scared look on the driver’s face, the manner in
which Baxter vaguely answered his questions, and the fact that Baxter did not
present any identification, he asked Baxter to step out of the car.  Quan said
that by that time he believed “that there must have been something else going
on in the car and that [he] needed to further investigate it.”

          As
Baxter exited the vehicle and walked toward Quan’s cruiser, Quan continued to
ask her about drug use “because she gave . . . vague answer[s].” 
Quan also testified that he believed that based on Baxter’s appearance, there
was a “drug issue” afoot and that the drug was most likely methamphetamine. 
Quan said that as he continued to question Baxter about drugs, her answers
“changed” multiple times.  At first, Baxter said that she had not done drugs in
“a long time,” but that answer changed to “every once in a while.”  Quan
testified that he told Baxter that he had a hard time believing that she did
not use methamphetamine more consistently than that.  Eventually, Baxter said
that she had used methamphetamine earlier.  Quan then asked Baxter if she had
any drugs on her.  Baxter initially stated that she did not.  But after Quan
told her that he could have a female officer come and strip search her at a gas
station, Baxter “became extremely nervous.”

Quan
said that based on his training and experience and based on the fact that
Baxter had voluntarily offered to let him search the vehicle, he “knew that
[drugs were] on her somewhere.”  Baxter eventually said that she did have drugs
on her but that they “didn’t belong to her.”  Baxter said that what she had on
her was between her breasts and belonged to the driver.  Baxter eventually
pulled a pill bottle with two small baggies inside it and a glass pipe from
between her breasts, and a black scale from the front of her pants.

          Quan
then instructed the trainee to have the driver exit the vehicle.  After
initially denying knowledge of any drugs or drug paraphernalia, the driver said
that he had given the drugs to Baxter to discard them out the window but that
Baxter chose to hide them on her person instead.  The trial court denied
Baxter’s motion to suppress.  This court has reviewed the video from Quan’s
in-car video recorder, and the video reflects Quan’s recollection of events.

          After
the trial court denied the suppression motion and after Baxter entered a plea
of guilty, the trial court sentenced Baxter to two years’ deferred adjudication
and a $1000 fine.  This appeal followed.

III.  Discussion

          In
three points, Baxter contends that the trial court erred by denying her motion
to suppress.  The State counters that Quan developed reasonable suspicion that
justified his questioning Baxter about her possibly possessing drugs; thus, the
trial court did not err by denying Baxter’s motion to suppress.  The trial
court did not make specific findings of facts or conclusions of law following
its denial of Baxter’s motion.

          A.      Standard
of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings,
we determine whether the evidence, when viewed in the light most favorable to
the trial court’s ruling, supports those fact findings.  Kelly, 204
S.W.3d at 818–19.  We then review the trial court’s legal ruling de novo
unless its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id. at 818.

          When
the record is silent on the reasons for the trial court’s ruling, or when there
are no explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court’s ruling if the evidence, viewed in the light
most favorable to the trial court’s ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see Wiede,
214 S.W.3d at 25.  We then review the trial court’s legal ruling de novo
unless the implied fact findings supported by the record are also dispositive
of the legal ruling.  Kelly, 204 S.W.3d at 819.

          We
must uphold the trial court’s ruling if it is supported by the record and correct
under any theory of law applicable to the case even if the trial court gave the
wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

          When
the trial court grants a motion to suppress without filing findings of fact or
any other explanation and the only evidence presented in the suppression
hearing is the testimony of the arresting officer, there is not a “concrete” set
of facts that can be implied from such a ruling.  Ross, 32 S.W.3d at 856;
Garcia-Cantu, 253 S.W.3d at 241.  In those cases, there is a mixed
question of law and fact that turns on an evaluation of the credibility and
demeanor of the sole witness whom the trial court obviously chose to believe.  Ross,
32 S.W.3d at 856; Guzman, 955 S.W.2d at 89.  In such cases, we view the
evidence in the light most favorable to the trial court’s ruling, giving it
almost total deference.  Ross, 32 S.W.3d at 856; see also Garcia-Cantu,
253 S.W.3d at 241 (“This same highly deferential standard applies regardless of
whether the trial court has granted or denied a motion to suppress evidence.”).

          B.      Reasonable
Suspicion

          A
police officer may lawfully stop and detain a person for a traffic violation.  Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Mohmed v. State,
977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref’d).  A routine traffic
stop resembles an investigative detention.  Berkemer v. McCarty, 468
U.S. 420, 439–40, 104 S. Ct. 3138, 3149–50 (1984); State v. Cardenas,
36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  During
the detention, the officer may request information concerning the driver
license, ownership of the vehicle, the driver’s insurance information, the
driver’s destination, and the purpose of the trip.  Mohmed, 977 S.W.2d
at 628.  An officer may also conduct a warrant check to determine whether the
driver has any outstanding warrants.  Smith v. State, 840 S.W.2d 689, 692
(Tex. App.—Fort Worth 1992, pet. ref’d); Petty v. State, 696 S.W.2d 635,
639 (Tex. App.—Dallas 1985, no pet.).  An officer may even conduct a pat-down
search of the driver for weapons and request the driver’s consent to search his
vehicle.  Florida v. Bostick, 501 U.S. 429, 435, 111 S. Ct. 2382,
2386 (1991);Terry v. Ohio, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968);
Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). 
Furthermore, during a valid traffic stop, a police officer has the authority to
order a passenger to step out of the car.  Villareal v. State, 116
S.W.3d 74, 82 (Tex. App.—Houston [14th Dist.] 2001, no pet.); see also
Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App.), cert. denied,
522 U.S. 894 (1997) (stating that “passengers in an automobile are subject to
temporary investigative detentions in the same manner as pedestrians”).

An
investigative detention must be temporary, and the questioning must last no
longer than is necessary to effectuate the purpose of the stop.  Florida v.
Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); Balentine
v. State, 71 S.W.3d 763, 770–71 (Tex. Crim. App. 2002); Davis v. State,
947 S.W.2d 240, 245 (Tex. Crim. App. 1997).  In determining whether the
duration of an investigative detention is reasonable, “common sense and
ordinary human experience must govern over rigid criteria.”  United States
v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985).  Once an
officer concludes the investigation of the conduct that initiated the stop,
continued detention of a person is permitted for the purpose of issuing a
citation.  Kothe v. State, 152 S.W.3d 54, 65 n.43 (Tex. Crim. App. 2004)
(citing with approval United States v. Wellman, 185 F.3d 651, 656 (6th
Cir. 1999)), which holds that prolonging a detention for the purpose of issuing
the citation is “well within the bounds of the initial stop”); see Coleman
v. State, 188 S.W.3d 708, 719 (Tex. App.—Tyler 2005, pet. ref’d) (holding
that purpose of stop was complete upon the issuance of the citation), cert.
denied, 549 U.S. 999 (2006). A detention may also be prolonged beyond the
point when the purpose of the initial stop is complete if there is reasonable
suspicion to believe another offense has been or is being committed.  United
States v. Brigham, 382 F.3d 500, 510–11 (5th Cir. 2004); Davis, 947
S.W.2d at 245; McQuarters v. State, 58 S.W.3d 250, 256 (Tex. App.—Fort
Worth 2001, pet. ref’d).

“Reasonable
suspicion” exists if an officer has specific articulable facts that, when
combined with rational inferences from those facts, would lead him to
reasonably suspect that a particular person has engaged or is—or soon will be—engaging
in criminal activity.  Terry, 392 U.S. at 21, 88 S. Ct. at 1880; Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); McQuarters, 58
S.W.3d at 255.  The officer must be able to articulate more than an “inchoate
and unparticularized suspicion or ‘hunch’” of criminal activity.  Illinois
v. Wardlow, 528 U.S. 119, 123–24, 120 S. Ct. 673, 676 (2000).  The
circumstances that raise suspicion that illegal conduct is taking place need
not be criminal in themselves; however, the suspicious conduct relied upon by
an officer must be sufficiently distinguishable from that of innocent people
under the same circumstance to clearly, if not conclusively, set the suspect
apart from them.  Davis, 947 S.W.2d at 242; Crockett v. State,
803 S.W.2d 308, 311 (Tex. Crim. App. 1991).

The
existence of reasonable suspicion is determined by considering the totality of
the circumstances.  Garcia, 43 S.W.3d at 530; McQuarters, 58
S.W.3d at 255.  Increasing or extreme nervousness and conflicting or
implausible information can, along with other factors, raise a reasonable
suspicion of criminal activity so as to prolong a traffic stop.  Haas v.
State, 172 S.W.3d 42, 53 (Tex. App.—Waco 2005, pet. ref’d); see also
Veal v. State, 28 S.W.3d 832, 837 (Tex. App. —Beaumont 2000, pet. ref’d) (“Extreme
nervousness has traditionally been a fact that law enforcement has used in its
list of elements leading up to either reasonable suspicion or probable
cause.”).  But nervousness alone is not sufficient to be a factor giving rise
to reasonable suspicion.  LeBlanc v. State, 138 S.W.3d 603, 608 n.6
(Tex. App.—Houston [14th Dist.] 2004, no pet.).

          In
this case, after initiating a lawful traffic stop, Quan approached the
passenger side of the car and began to explain to the driver why he had been
stopped and ask where he was traveling to and from.  Quan testified, and the
video confirms, that at that moment Baxter began to answer his questions in
great detail while the driver remained silent.  According to Quan, at that time
the driver had an extremely scared look on his face.  Quan then asked Baxter
about her identification.  Baxter did not have any type of identification.  Quan
then inquired whether Baxter had a previous criminal record.  When Quan asked
Baxter whether she had ever been convicted of drug possession, Baxter answered,
“no.”  But when Quan asked whether Baxter used drugs, Baxter first said “no”
but then immediately revised her answer to not “in a long time.”

According
to Quan, based on the manner in which the car initially swerved and
accelerated, the driver’s extreme nervousness, Baxter’s unusual manner in which
she tried to “take over the traffic stop” and control the conversation that he
had initiated with the driver, and Baxter’s vague answers to his question
directed at her, he believed that at that time he needed to investigate
further.  He asked Baxter to step out of the car, and he continued to question
her about drug use.  We conclude that at this point during the encounter, Quan
possessed specific articulable facts that, when combined with rational
inferences from those facts, led him to believe that Baxter or the driver was
engaged in criminal activity.  See Haas, 172 S.W.3d at 53–54 (holding
that defendant’s increased nervousness, volunteering a lot of information, and
information that the officer found implausible and inconsistent gave officer
reasonable suspicion to continue to investigate whether defendant was engaged
in criminal activity).

After
exiting the vehicle, Quan continued to question Baxter.  Baxter’s answers rapidly
and repeatedly changed until eventually she admitted to having used drugs
“earlier” from one of the baggies found on her.  Quan said that this indicated
the need to further question Baxter about drugs possibly being on her person or
in the vehicle.  See Stone v. State, 147 S.W.3d 657, 661 (Tex.
App.—Amarillo 2004, pet. ref’d) (concluding that passenger’s admission to
methamphetamine use three days prior to traffic stop relevant factor in officer
forming probable cause to search person and vehicle).  Again, Quan’s questions
were met with vague and changing answers.  Within minutes of the initial
traffic stop, Baxter admitted that she had drugs on her person but that they
were not hers and that they belonged to the driver.  Viewing the evidence in
the light most favorable to the trial court’s ruling, and looking at the
totality of circumstances while giving almost total deference to that ruling,
we conclude that the trial court did not abuse its discretion by denying
Baxter’s motion to suppress.  Garcia-Cantu, 253 S.W.3d at 241; see Haas,
172 S.W.3d at 53 (holding that officer who initially stopped defendant for
traffic violation had reasonable suspicion to prolong defendant’s detention so
that officer could conduct a canine sniff on defendant’s car when defendant
displayed increasing nervousness, volunteered a lot of information, and
provided implausible and inconsistent answers to officer’s questions).  We
overrule Baxter’s three points.

IV.  Conclusion

Having overruled Baxter’s three points, we affirm
the trial court’s orders.

 

 

 

BILL MEIER

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
August 31, 2011









[1]See Tex. R. App. P. 47.4.





[2] See Tex. Health
& Safety Code Ann. § 481.115(a) (West 2010)