

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-437-CR

GARY WEBSTER                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Gary Webster appeals from his conviction for fraudulent possession of identifying information.  In two points, Webster argues that the trial court erred by denying his motion to suppress and by refusing to submit a jury instruction regarding the legality of his detention.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

### A. Traffic Stop

In the early morning hours of December 4, 2007, Flower Mound Police Officer Nick Hill pulled over a vehicle for a traffic violation. As soon as the vehicle came to a stop, the driver, later identified as William Eric Richardson, opened his door and attempted to exit the vehicle. Officer Hill immediately exited his patrol unit and instructed Richardson to stay where he was. Richardson complied and remained standing beside the driver's side door.

Officer Hill then approached and made contact with Richardson. He asked Richardson for his driver's license and proof of insurance, which Richardson provided. He informed Richardson that he was being stopped for high beam activation.

Officer Hill then made contact with the passenger who was sitting in the front right seat of the vehicle. The passenger identified himself as Webster. Officer Hill asked Webster if he had any identification on him. Webster replied that he did not and that he was not carrying a wallet. When questioned further, Webster informed Officer Hill that he was thirty-nine years old and that he had had a Texas driver's license at one time but that he now had an Oklahoma license. Officer Hill instructed Webster to "hang tight."

Officer Hill then began asking Richardson, who at this point was standing at the rear of the vehicle, basic questions such as where he was coming from and where he was going. Richardson responded that he was coming from a hotel in Lewisville and that he was going to Wal-Mart. Officer Hill then instructed Richardson to stay at the rear of the vehicle while he went to his patrol unit to run a standard computer check.

The computer check returned an outstanding warrant for Richardson and listed him as "armed and dangerous." No warrants were returned for Webster. Officer Hill, who was alone, requested a back-up unit and asked dispatch for confirmation on Richardson's warrant. The back-up unit arrived almost immediately. Upon arriving at the scene, Officer Ben Lippens went and stood by the open driver's side door to keep an eye on Webster, at times shining his flashlight into the vehicle.

While Officer Lippens kept an eye on Webster, Officer Hill asked Richardson more questions. He asked Richardson whether he owned the vehicle, and Richardson responded that the car belonged to his mother. Officer Hill also asked, "Do you have any problem if I take a look in your car?" Richardson responded that he did not. Officer Hill continued to talk with Richardson while waiting for confirmation on the warrant. Shortly thereafter,

dispatch confirmed the warrant, and Officer Hill placed Richardson under arrest and seated him in the backseat of his patrol unit.

Officer Hill then went to search the vehicle. He asked Webster, who was still sitting in the front passenger seat, to step out of the vehicle. Officer Hill then performed a pat-down on Webster's outer clothing. At some point, Officer Lippens told Webster that he could sit in a patrol unit to get out of the cold.

During the search of the vehicle, the officers discovered a clear plastic wallet insert in the driver's seat, containing a social security card, a Visa check card, and a Texas Department of Human Services card, all bearing a name other than Richardson or Webster. Under the wallet insert was a Wal-Mart bag containing $100 gift cards still attached to their original cardboard backing. The officers also found a laptop computer and a semi-clear box in the floorboard on the front passenger side of the vehicle. The box contained transparency graphing paper; razor blades; glues and adhesives; gift cards; driver's licenses, identifications, and a keychain credit card, all belonging to individuals other than Richardson or Webster.

In the backseat floorboard on the driver's side, the officers discovered a red plastic folder containing a list of Sun Shop customers and their financial information; pictures of Webster; a document from a website discussing magnetic strip readers; and hotel receipts with credit card information on

4

individuals other than Richardson or Webster. In the rear seat of the vehicle, the officers found a small photo printer attached to a power inverter that was plugged into the cigarette lighter. And in the trunk of the vehicle, the officers discovered an aluminum box containing razor blades, white-out, hard drives for laptops, glue, a screwdriver, batteries, scissors, and printer cartridges.

After searching the vehicle, the officers placed Webster under arrest and transported him to jail where they searched him and discovered a blank credit card hidden in his boot. The State charged Webster with fraudulent use or possession of identifying information. The indictment included two enhancement paragraphs, one for unlawful possession of a firearm by a felon and the other for the felony offense of credit card abuse.

On July 10, 2008, Webster filed a motion to suppress physical evidence, claiming that the evidence seized and obtained was the result of a warrantless search in violation of his constitutional rights under the Unites States and Texas Constitutions.

B. Hearing on Motion to Suppress

On July 21, 2008, the trial court held a hearing on Webster's motion to suppress. During the hearing, in addition to the facts stated above, Officer Hill testified that, based on his past experience, he became suspicious when Richardson attempted to exit the vehicle before Officer Hill had even

approached the driver's side door. He also testified that it meant something when Webster did not have identification on him because "typically people that age will have their I.D. with them." When asked why he had waited to search Richardson's vehicle until after the warrant had been confirmed, Officer Hill replied,

> It goes back to the warning that we received for Mr. Richardson, the fact [that] he was armed and dangerous.
>
> I did not know Mr. Webster. Mr. Webster was a very large man. I didn't want to have both of them out of the vehicle at the same time, and I also wasn't in a position where I could effect an arrest upon Mr. Richardson because I had not received confirmation of the warrant. So I decided at that point to wait until I received confirmation so that I could effectively handle Mr. Richardson and place him in the rear of my patrol vehicle and then instruct Mr. Webster to exit the vehicle.

Officer Hill further testified that when the driver of a vehicle is arrested, the standard practice is to tow the vehicle if it is on a public roadway or if the owner of the vehicle is not the same person as the driver. He testified that, before impounding the vehicle, and prior to having the vehicle towed, officers will perform an inventory search to account for all the items that may be in the vehicle. When asked whether he had obtained consent to search Richardson's vehicle, Officer Hill responded, "Yes, sir." When asked whether it was a search incident to arrest, he again responded, "Yes, sir."

On cross-examination, Officer Hill was asked whether he arrested Webster before or after he had found the "stuff" in the vehicle and his response was "afterwards." When questioned about the probable cause that led to the arrest of Webster, Officer Hill responded,

> It started with the wallet that we located in the driver's seat. The remainder of the search of the vehicle, located numerous credit cards, other identifying information belonging to other individuals, computer equipment that would be used in making photographs, or other type of photographic items. And all those items combined together establish the probable cause.
>
> . . . .
>
> There were a number of items located in the front passenger side seating area and floorboard. There were other items also located in the rear seat, both behind the driver's seat and the passenger seat. And they were easily accessible by [Webster].

Officer Hill testified that he had asked to search Richardson's vehicle because, "[Richardson] had made an attempt to exit the vehicle prior to me reaching his position. After speaking with him, he seemed a bit nervous." When asked at what point he had concluded his investigation as to the original purpose for the traffic stop, Officer Hill responded that it was when he had received confirmation on Richardson's warrant.

On further cross-examination, Officer Hill testified that Webster was free to leave up to the point when the officers found probable cause to arrest him, that Webster never indicated a desire to leave, and that although he had not

7

told Webster that he could leave, he had never told Webster that he was being detained. Officer Hill testified that when Webster sat in the back of Officer Lippens's heated patrol unit, the door had been left open, Webster had not been handcuffed, and he sat sideways with his feet outside the door on the ground. When asked about Officer Lippens standing beside the driver's side door while Webster sat in the passenger seat and the pat-down performed on Webster, Officer Hill responded that it was all for officer safety.

Officer Hill testified that he had not released Richardson's vehicle to Webster because (1) he needed to perform a search on the vehicle, (2) Webster did not have a valid driver's license, and (3) Richardson did not have the authority to release the vehicle to Webster because Richardson was not the registered owner. Finally, Officer Hill testified that Webster never indicated any ownership over the items in Richardson's vehicle, nor did he indicate at any time that he wanted Officer Hill to stop looking.

In addition to Officer Hill's testimony, Officer Lippens testified that he had never heard Webster claim any ownership over the items in Richardson's vehicle, nor had he heard Webster ask to leave. On cross-examination, Officer Lippens testified that he could not recall if he had told Webster to cease talking on his cell phone but that if he had it would have been because of officer safety.

Webster testified during the hearing that when Officer Hill told him to "hang tight," he had not felt as if he was free to leave the scene. He also testified that he had told Officer Lippens that he wanted to leave and take his property with him and that the officers had not asked for his permission to search his property. When asked about sitting in the patrol unit, Webster testified that the door had been closed and that he had been unable to get out. Finally, Webster testified that, of the items found in the vehicle, he owned the computer equipment, the clear plastic box, some of the bags of clothing found in the trunk, and the wooden box, and that he had assumed control over the red folder, which belonged to his girlfriend.

After taking the matter under consideration, the trial court denied Webster's motion to suppress, and it entered the following pertinent findings of fact and conclusions of law.

Findings of Fact

1. [Webster] was a passenger in the car and had no ownership interest in the car.

2. [Webster's] presence had no bearing on the search of the car or for the justification for the search of the car.

3. [Webster] did not tell the police officers at the scene that he wanted to leave the scene with various property that he claimed belonged to him. [Webster's] testimony on this subject is not credible—the testimony of the police officers on this subject is credible.

9

4. The police had no reason to suspect that the property at issue was not associated with the car.

. . .

10. Roughly three minutes after Officer Hill was notified of a warrant against the driver, the officer learned that [Webster] had no outstanding warrants, that his Texas driver's license had been suspended, and that his claim of having a valid Oklahoma driver's license could not be verified. Officer Hill reasonably believed that if he released the car to [Webster], [Webster] would be operating a vehicle while his license was suspended. [Webster] overheard that his identity check came back clear, i.e., no outstanding warrants.

. . .

13. Once the driver had been arrested, police removed [Webster] from the car and conducted a brief pat-down for officer safety. [Webster] walked off camera without a police escort.

14. [Webster] could have left the scene had he asked to do so. Police allowed him to sit in a squad car to escape the cold temperature, and the door was open while he waited there. [Webster's] testimony to the contrary is not credible. Specifically, [Webster] did not ask to leave. The officers' testimony on this subject is credible.

. . .

Conclusions of Law

1. [Webster] has no standing to complain of the search of the car in which he was a passenger and in which he had no ownership interest. Moreover, the search of the car did not depend upon the detention of [Webster], so he has no standing to complain of its search based on his own detention.

2. Since [Webster] did not assert an ownership interest in any property inside the car during the stop, and since the police had no reason to suspect any of the property was not associated with the car, [Webster] has no standing to complain of the search of the property he now alleges was his.

. . .

6. [Webster] and [the] driver were seized and detained by the traffic stop, but such detentions were never prolonged past what was required for police to complete [their] investigation and therefore never became illegal . . .

7. [Webster] has no standing to complain that the search of the driver's car exceeded the scope of the driver's consent.

. . .

C. Trial on the Merits

During a trial on the merits, Officer Hill, Officer Lippens, and Webster provided similar testimony as that provided during the suppression hearing. At the close of evidence, Webster requested that the jury charge include the following instruction:

> Bearing these instructions in mind, if you find that the defendant asked the police officers, or somehow communicated to the police officers, that he wanted to leave the scene with his property before the search of the driver's seat of the vehicle, and the defendant would have in fact left the scene if it were not for the officer's conduct, or you have a reasonable doubt thereof, then you must not consider the evidence obtained from the defendant's person or property[,] and will not consider such evidence for any purpose whatsoever.

The trial court denied Webster's requested instruction, but it granted him an article 38.23 instruction as to property found on his person.[2]

At the close of trial, the jury found Webster guilty of fraudulent possession of identifying information, and the trial court sentenced him to forty years' confinement. This appeal followed.

### III. Motion to Suppress

In his first point, Webster argues that the trial court erred by denying his motion to suppress because he was unlawfully detained under the Fourth Amendment of the United States Constitution.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-

---

[2] *See* Tex. Code Crim. Proc. Ann. art. § 38.23(a) (Vernon 2005) (providing that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996). But this general rule is inapplicable when the parties consensually relitigate the suppression issue during the trial on the merits. *Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 799. If the State raised the issue at

13

trial either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review. *Rachal*, 917 S.W.2d at 799. Here, although Webster objected to all of the evidence recovered from the vehicle on Fourth Amendment grounds, he did not object to Officer Hill's testimony pertaining to the stop and investigation. Nor did the State object when Webster testified about the circumstances of his alleged detention. Therefore, we will consider both the evidence presented at the suppression hearing and the evidence presented at trial.

B. The Fourth Amendment

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State,* 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.

*Id.* at 673; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

## C. Standing to Challenge the Stop

Before we can address whether Webster's Fourth Amendment rights were violated, we must first assess whether Webster has standing to complain about the search and seizure of the items taken from Richardson's vehicle. Webster has standing to contest the search only if he had a reasonable personal expectation of privacy that he claims was violated. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004).

Proof of "a reasonable expectation of privacy" is at the forefront of all Fourth Amendment claims. *Id.* Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *See Rakas v. Illinois*, 439 U.S. 128, 139, 99 S. Ct. 421, 428 (1978) (noting that issue of standing involves two inquiries: first, whether defendant has alleged an "injury in fact"; and second, "whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties"); *see also Alderman v. United States*, 394 U.S. 165, 174, 89 S. Ct. 961, 965–67 (stating "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously

15

asserted."). In other words, he must prove that he was a "victim" of the unlawful search or seizure. *Kothe*, 152 S.W.3d at 59. A defendant does not have standing to complain about the invasion of someone else's personal rights. *United States v. Salvucci*, 448 U.S. 83, 84–85, 100 S. Ct. 2547, 2549–50 (1980); *Villarreal v. State*, 708 S.W.2d 845, 849–50 (Tex. Crim. App. 1986), *overruled on other grounds by Blake v. State*, 971 S.W.2d 451 (Tex. Crim. App. 1998). Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *see also United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992). Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing de novo. *State v. Johnson*, 896 S.W.2d 277, 285 (Tex. App.—Houston [1st Dist.] 1995), *aff'd*, 939 S.W.2d 586 (Tex. Crim. App. 1996); *see also United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001) (stating that courts review de novo the issue of whether a defendant has standing to challenge a search).

In addressing standing, "it is critical that the precise police conduct being objected to be properly identified, for this may itself turn out to be

16

determinative on the standing issue." *Kothe*, 152 S.W.3d at 60. Here, the State argues that Webster had no reasonable expectation of privacy in Richardson's vehicle. However, that is not the basis of his complaint. Rather, Webster's Fourth Amendment claim is based upon an allegedly prolonged detention of himself as the passenger in Richardson's vehicle.

The intrusion a vehicle stop causes is personal to those in the car when it occurs. *United States v. Powell*, 929 F.2d 1190, 1195 (7th Cir. 1991) (collecting cases and concluding that passengers, as well as drivers, have standing to challenge a vehicle stop or prolonged detention). Both Webster and Richardson had a reasonable expectation of privacy in not being detained beyond the time necessary for Officer Hill to complete his investigation. Thus, Webster has standing to complain about any illegally prolonged detention. *See Brendlin v. California*, 551 U.S. 249, 255–56, 127 S. Ct. 2400, 2406 (2007).

Having determined Webster has standing to challenge the stop, we now review whether Officer Hill unreasonably prolonged Webster's detention after Richardson's arrest.

D.  Unlawful Detention

There are three basic categories of interaction between police officers and citizens:  encounters, investigative detentions, and arrests. *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). An encounter is a friendly

exchange of pleasantries or mutually useful information. *Id*. In an encounter, a police officer is not required to possess any particular level of suspicion, because the citizen is under no compulsion to remain. *Id*. In an investigative detention (also known as a temporary detention or "Terry-stop"), however, the officer must be able to articulate specific facts that, in light of his experience and personal knowledge, together with inferences from those facts, reasonably warrant the intrusion on the freedom of the citizen stopped. *Id*. In other words, to justify a detention, there must be a reasonable suspicion by the officer that some unusual activity is or has occurred, that the detained person is connected with the activity, and that the unusual activity is related to the commission of a crime. *Id*. An investigative detention is a seizure under which the citizen is not free to leave, at least for some period of time. *Id*. The key questions in determining whether an interaction is an encounter or a detention are whether a reasonable person would have believed he was free to leave and whether he actually yielded to the officer's show of authority. *Id*. It is also important to note that these differing levels of interaction often flow from one into the next, and sometimes the lines between them may blur in any given transaction. *See id.* "[W]hat may begin as a consensual encounter can readily become an investigative detention, which may evolve into an arrest." *Id*.

Here, Webster does not challenge the propriety of the initial traffic stop. Instead, Webster attacks the scope of the detention and asserts that what began as a consensual encounter quickly moved into an unlawful detention. Specifically, Webster argues that a reasonable person under similar circumstances would not have felt free to leave—that is, (1) having an officer say to "hang tight," (2) having an officer stand next to the open driver's side door to keep watch, (3) being removed from the vehicle and frisked for weapons, and (4) being placed in the rear seat of a patrol unit. Webster further argues that because he was illegally detained, the search of the vehicle violated his Fourth Amendment rights. In response, the State contends Webster was never illegally detained because his detention did not exceed the time necessary to complete the traffic stop investigation. And, because the detention was lawful, Webster, as a passenger in the car, lacks standing to complain of the search.

For Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable to be lawful. *Brendlin*, 551 U.S. at 250, 127 S. Ct. at 2403; *Davis v. State*, 947 S.W.2d 240, 243–45 (Tex. Crim. App. 1997); *Spight v. State*, 76 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A traffic stop is reasonable if the police officer was justified in making the stop and his actions during the stop were confined in length and scope to that necessary to

19

fulfill the purpose of the stop. *Kothe*, 152 S.W.3d at 63; *Davis*, 947 S.W.2d at 242, 243 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968)). Actions an officer may take within the scope of investigation attendant to a traffic stop include requesting identification, proof of insurance, and vehicle registration; checking for outstanding warrants; verifying the vehicle is not stolen; and asking about the purpose of the trip and intended destination. *United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) (op. on reh'g) (en banc); *Kothe*, 152 S.W.3d at 63; *Spight*, 76 S.W.3d at 766; *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). The officer may approach not just the driver for this information but also any passengers. *Kothe*, 152 S.W.3d at 64 n.36; *Duff v. State*, 546 S.W.2d 283, 286 (Tex. Crim. App. 1977); *Freeman v. State*, 62 S.W.3d 883, 888 (Tex. App.—Texarkana 2001, pet. ref'd). Additionally, the officer may ask the driver and passengers to step out of the car. *Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 884 (1997). A stop may last no longer than is necessary to effectuate its purpose, although no rigid time limitation exists on its length. *Kothe*, 152 S.W.3d at 63, 64, 65 n.43.

Applying the above principles to the facts of this case, we conclude the trial court properly denied Webster's motion to suppress. Having lawfully stopped Richardson and Webster, Officer Hill was authorized to ask Richardson

20

and Webster for identification, to run a computer check, and to wait for confirmation on Richardson's outstanding warrant. *See Kothe*, 152 S.W.3d at 64 n.36; *Davis*, 947 S.W.2d 240, 244–45. Further, the evidence shows that Webster voluntarily answered Officer Hill's questions, resulting in a consensual encounter. *See Duff*, 546 S.W.2d at 286 (stating that officers may approach the passengers in the vehicle and ask them questions so long as the officer does not attempt to coerce a passenger's cooperation). Webster, however, argues that when Officer Hill told him to "hang tight," and when Officer Lippens stood watch beside the driver's side door, he was being illegally detained.

A detention following a traffic stop is not illegal as to a driver or passenger so long as the driver or passenger has not been detained beyond the time necessary for the officer to complete his investigation. *See Kothe*, 152 S.W.3d at 61. At the point in the stop when Officer Hill told Webster to "hang tight" and when Officer Lippens stood watch over the vehicle, the initial traffic stop investigation was still ongoing—that is, Officer Hill had not yet received confirmation on Richardson's warrant. *See id.* at 63–64; *see also Powell v. State*, 5 S.W.3d 369, 378–79 (Tex. App.—Texarkana 1999, pet. ref'd) (stating that a traffic stop investigation is not fully resolved until a computer check is completed; the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen; and that the officer issues

21

either a citation or warning).  Thus, Officer Hill's and Officer Lippens's actions were within the scope of the investigation attendant to the traffic stop and, therefore, were reasonable as a matter of substantive Fourth Amendment law. *See Brigham*, 382 F.3d at 507–08; *see also Cunningham v. State*, 11 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (stating that an officer who makes a valid traffic stop may take appropriate measures to guarantee his safety).

The evidence also shows that, while the traffic stop investigation was still ongoing, Officer Hill requested permission from Richardson to search the vehicle and that consent to do so was voluntarily given.  *See Guerrero v. State*, No. 04-04-00684-CR, 2005 WL 2438315, at *2 (Tex. App.—San Antonio Oct. 5, 2005, no pet.) (mem. op., not designated for publication) (stating that merely requesting such consent does not amount to an unlawful seizure, and neither probable cause nor reasonable suspicion is required for the officer to ask). Officer Hill, therefore, was authorized to act upon the consent given him.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (stating that an established exception to both the warrant and probable cause requirements is a search conducted pursuant to valid consent).  It reasonably falls within the scope of that consent to ask persons in the vehicle to exit it so that the search can be conducted.  *See Rhodes*, 945 S.W.2d at 118–19

22

(holding that asking passengers to step outside the vehicle is not an unreasonable intrusion of their Fourth Amendment rights).  Consequently, it was reasonable for Officer Hill to remove Webster from the vehicle in order to conduct a search of the vehicle.  *See id.*[3]  Further, Officer Hill's decision to frisk Webster for weapons after removing him from the vehicle was also reasonable under the circumstances—that is, Webster's proximity and association with an individual listed as "armed and dangerous."  *See Cunningham*, 11 S.W.3d at 440 (stating that an officer who makes a valid traffic stop may take appropriate measures to guarantee his safety); *see also Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002) (stating that "[t]he officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger").

Next, Webster asserts that because Richardson had already been arrested when Officer Hill asked Webster to step out of the vehicle, the original purpose of the traffic stop investigation had been resolved and he, therefore, should have been free to leave.  We agree.  Webster, however, claims that he was still being detained because the officers placed him into a patrol unit and closed the

---

[3] It was also reasonable to remove Webster from the vehicle because Richardson had been arrested and Webster did not have his driver's license with him.  Thus, the officers were not authorized to release the vehicle to Webster.

door.  Webster also asserts that he asked to leave with his property and was told by the officers that he could not leave.

The evidence, however, shows that although neither Officer Hill nor Officer Lippens told Webster that he could leave, they also never told him that he was being detained.  *See Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S. Ct. 417, 421 (1996) (stating that there is no requirement to inform a detainee he is free to leave after a lawful traffic stop).  Further, the video from Officer Hill's patrol unit shows that, after being frisked, Webster walked away without a police escort.  *See Moreno v. State*, No. 07-07-0477-CR, 2009 WL 1361594, at *2 (Tex. App.—Amarillo May 14, 2009, no pet.) (concluding that appellant's freedom to move around discredited his contention that he was being detained).  And, to the extent that Webster relies on his own testimony to undermine the officers' testimonies as to:  (1) whether it was an option to sit in the patrol unit, (2) the patrol unit's door being opened or closed, and (3) whether he asked to leave with his property or asserted ownership over any of the items in the vehicle, we defer to the trial court on issues of credibility.  *See Amador*, 221 S.W.3d at 673; *Estrada*, 154 S.W.3d at 607; *Johnson*, 68 S.W.3d at 652–53.  Thus, based on the totality of the circumstances viewed in the light most favorable to the trial court's factual findings, we conclude that (1) the officers' conduct up to Richardson's arrest—that is, the end of the

traffic stop investigation—was reasonable and (2) the officers' conduct after Richardson's arrest did not result in an unlawful detention.

Having concluded that the initial traffic stop was neither illegal nor unlawfully extended to render it unreasonable, we turn to the State's argument that Webster, as a passenger in the car, lacked "standing" to complain of the search.

E. Standing to Challenge the Search

A passenger may challenge the legality of a search of the vehicle in which he was riding so long as the search resulted from an infringement on his Fourth Amendment rights. *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984); *Stone v. State*, 147 S.W.3d 657, 659 (Tex. App.—Amarillo 2004, pet. ref'd). In other words, he must show that the initial detention leading to the search was illegal, his removal from the car was unreasonable, or he had a possessory interest in the car itself or the items seized from the car. *Kothe*, 152 S.W.3d at 61; *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000); *Lewis*, 664 S.W.2d at 348.

Here, because the detention was neither illegal nor unlawfully extended to render it unreasonable, Webster may challenge the legality of the search only upon a showing that his removal from the car was unreasonable or that he had a possessory interest in the vehicle itself or the items seized from the vehicle.

25

*See Kothe*, 152 S.W.3d at 61; *Hughes*, 24 S.W.3d at 838; *Lewis*, 664 S.W.2d at 348. Webster, however, makes none of these assertions.[4] His sole argument as to standing is based on the lawfulness of the detention. As such, we conclude that Webster cannot challenge the legality of the search. Accordingly, we overrule Webster's first point.

## IV. Jury Instruction

In his second point, Webster asserts that the trial court erred by denying his requested jury instruction on the legality of the search that led to the discovery of the evidence seized from Richardson's vehicle. *See* Tex. Code Crim. Proc. Ann. art. 38.23. However, having concluded that Webster's rights were not infringed by an illegal detention and given Webster makes no argument that his removal from the vehicle was unreasonable or that he had a possessory interest in the items seized, we conclude Webster lacks the capacity to complain of the denial of his requested jury instruction. *See Walter v. State*, 28 S.W.3d 538, 540–41 (Tex. Crim. App. 2000) (capacity to claim protection of Fourth Amendment depends upon whether legitimate expectation of privacy

---

[4] To the extent Webster claims that he exerted a possessory interest over the items seized from the vehicle, we defer to the trial court on issues of credibility. Furthermore, Webster does not provide any citation to legal authority nor does he provide any legal analysis in support of his claim that he exerted a possessory interest over the items seized from the vehicle. Thus, he presents nothing for our review on this issue. *See Hankins v. State*, 132 S.W.3d 380, 385 (Tex. Crim. App.), *cert. denied*, 543 U.S. 944 (2004).

exists in "invaded place"); *Lewis*, 664 S.W.2d at 348; *see also Guy v. State*, No. 05-07-00733-CR, 2008 WL 3984051, at *8 (Tex. App.—Dallas Aug. 28, 2008, pet. ref'd) (not designated for publication) (holding that appellant was not entitled to requested article 38.23 instruction based on the same conclusions and reasoning presented here).  Accordingly, we overrule Webster's second point.

## V.  Conclusion

Having overruled both of Webster's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 25, 2010