COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-437-CR

 

GARY WEBSTER                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 362ND DISTRICT COURT OF DENTON COUNTY

 

 

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

Appellant
Gary Webster appeals from his conviction for fraudulent possession of
identifying information.  In two points,
Webster argues that the trial court erred by denying his motion to suppress and
by refusing to submit a jury instruction regarding the legality of his
detention.  We affirm.








II. 
Factual and Procedural Background

A.  Traffic Stop

In the
early morning hours of December 4, 2007, Flower Mound Police Officer Nick Hill
pulled over a vehicle for a traffic violation. 
As soon as the vehicle came to a stop, the driver, later identified as
William Eric Richardson, opened his door and attempted to exit the
vehicle.  Officer Hill immediately exited
his patrol unit and instructed Richardson to stay where he was. Richardson
complied and remained standing beside the driver=s side
door.

Officer
Hill then approached and made contact with Richardson.  He asked Richardson for his driver=s
license and proof of insurance, which Richardson provided.  He informed Richardson that he was being
stopped for high beam activation. 

Officer
Hill then made contact with the passenger who was sitting in the front right
seat of the vehicle.  The passenger
identified himself as Webster.  Officer
Hill asked Webster if he had any identification on him.  Webster replied that he did not and that he
was not carrying a wallet.  When
questioned further, Webster informed Officer Hill that he was thirty-nine years
old and that he had had a Texas driver=s
license at one time but that he now had an Oklahoma license.  Officer Hill instructed Webster to Ahang
tight.@ 








Officer
Hill then began asking Richardson, who at this point was standing at the rear
of the vehicle, basic questions such as where he was coming from and where he
was going.  Richardson responded that he
was coming from a hotel in Lewisville and that he was going to Wal-Mart.  Officer Hill then instructed Richardson to
stay at the rear of the vehicle while he went to his patrol unit to run a
standard computer check. 

The
computer check returned an outstanding warrant for Richardson and listed him as
Aarmed
and dangerous.@ 
No warrants were returned for Webster. 
Officer Hill, who was alone, requested a back-up unit and asked dispatch
for confirmation on Richardson=s
warrant.  The back-up unit arrived almost
immediately.  Upon arriving at the scene,
Officer Ben Lippens went and stood by the open driver=s side
door to keep an eye on Webster, at times shining his flashlight into the
vehicle. 








While
Officer Lippens kept an eye on Webster, Officer Hill asked Richardson more
questions.  He asked Richardson whether
he owned the vehicle, and Richardson responded that the car belonged to his
mother.  Officer Hill also asked, ADo you
have any problem if I take a look in your car?@
Richardson responded that he did not. 
Officer Hill continued to talk with Richardson while waiting for
confirmation on the warrant.  Shortly
thereafter, dispatch confirmed the warrant, and Officer Hill placed Richardson
under arrest and seated him in the backseat of his patrol unit. 

Officer
Hill then went to search the vehicle.  He
asked Webster, who was still sitting in the front passenger seat, to step out
of the vehicle.  Officer Hill then
performed a pat-down on Webster=s outer
clothing.  At some point, Officer Lippens
told Webster that he could sit in a patrol unit to get out of the cold. 

During
the search of the vehicle, the officers discovered a clear plastic wallet
insert in the driver=s seat, containing a social
security card, a Visa check card, and a Texas Department of Human Services
card, all bearing a name other than Richardson or Webster.  Under the wallet insert was a Wal-Mart bag
containing $100 gift cards still attached to their original cardboard
backing.  The officers also found a
laptop computer and a semi-clear box in the floorboard on the front passenger
side of the vehicle.  The box contained
transparency graphing paper; razor blades; glues and adhesives; gift cards;
driver=s
licenses, identifications, and a keychain credit card, all belonging to
individuals other than Richardson or Webster.








In the
backseat floorboard on the driver=s side,
the officers discovered a red plastic folder containing a list of Sun Shop
customers and their financial information; pictures of Webster; a document from
a website discussing magnetic strip readers; and hotel receipts with credit
card information on individuals other than Richardson or Webster.  In the rear seat of the vehicle, the officers
found a small photo printer attached to a power inverter that was plugged into
the cigarette lighter.  And in the trunk
of the vehicle, the officers discovered an aluminum box containing razor
blades, white-out, hard drives for laptops, glue, a screwdriver, batteries,
scissors, and printer cartridges.

After
searching the vehicle, the officers placed Webster under arrest and transported
him to jail where they searched him and discovered a blank credit card hidden
in his boot.  The State charged Webster
with fraudulent use or possession of identifying information.  The indictment included two enhancement
paragraphs, one for unlawful possession of a firearm by a felon and the other
for the felony offense of credit card abuse.

On July
10, 2008, Webster filed a motion to suppress physical evidence, claiming that
the evidence seized and obtained was the result of a warrantless search in
violation of his constitutional rights under the Unites States and Texas
Constitutions. 

B.  Hearing on Motion to Suppress








On July
21, 2008, the trial court held a hearing on Webster=s motion
to suppress.  During the hearing, in
addition to the facts stated above, Officer Hill testified that, based on his
past experience, he became suspicious when Richardson attempted to exit the
vehicle before Officer Hill had even approached the driver=s side
door.  He also testified that it meant
something when Webster did not have identification on him because Atypically
people that age will have their I.D. with them.@  When asked why he had waited to search
Richardson=s vehicle until after the
warrant had been confirmed, Officer Hill replied,

It goes back to the warning that we received for Mr. Richardson, the
fact [that] he was armed and dangerous.

 

I did not know Mr. Webster.  Mr.
Webster was a very large man. I didn=t want to have both of them out of the vehicle at
the same time, and I also wasn=t in a position where I could effect an arrest
upon Mr. Richardson because I had not received confirmation of the
warrant.  So I decided at that point to
wait until I received confirmation so that I could effectively handle Mr.
Richardson and place him in the rear of my patrol vehicle and then instruct Mr.
Webster to exit the vehicle.

 

Officer
Hill further testified that when the driver of a vehicle is arrested, the
standard practice is to tow the vehicle if it is on a public roadway or if the
owner of the vehicle is not the same person as the driver.  He testified that, before impounding the
vehicle, and prior to having the vehicle towed, officers will perform an
inventory search to account for all the items that may be in the vehicle.  When asked whether he had obtained consent to
search Richardson=s vehicle, Officer Hill
responded, AYes, sir.@  When asked whether it was a search incident
to arrest, he again responded, AYes,
sir.@








On
cross-examination, Officer Hill was asked whether he arrested Webster before or
after he had found the Astuff@ in the
vehicle and his response was Aafterwards.@  When questioned about the probable cause that
led to the arrest of Webster, Officer Hill responded,

It started with the wallet that we located in the driver=s seat.  The remainder of the search of the vehicle,
located numerous credit cards, other identifying information belonging to other
individuals, computer equipment that would be used in making photographs, or
other type of photographic items.  And
all those items combined together establish the probable cause.

 

. . . .

 

There were a number of items
located in the front passenger side seating area and floorboard.  There were other items also located in the
rear seat, both behind the driver=s seat
and the passenger seat.  And they were
easily accessible by [Webster]. 

Officer
Hill testified that he had asked to search Richardson=s
vehicle because, A[Richardson] had made an attempt
to exit the vehicle prior to me reaching his position.  After speaking with him, he seemed a bit
nervous.@ When
asked at what point he had concluded his investigation as to the original
purpose for the traffic stop, Officer Hill responded that it was when he had
received confirmation on Richardson=s
warrant. 








On
further cross-examination, Officer Hill testified that Webster was free to
leave up to the point when the officers found 
probable cause to arrest him, that Webster never indicated a desire to
leave, and that although he had not told Webster that he could leave, he had
never told Webster that he was being detained. 
Officer Hill testified that when Webster sat in the back of Officer
Lippens=s heated
patrol unit, the door had been left open, Webster had not been handcuffed, and
he sat sideways with his feet outside the door on the ground. When asked about
Officer Lippens standing beside the driver=s side
door while Webster sat in the passenger seat and the pat-down performed on
Webster, Officer Hill responded that it was all for officer safety.

Officer
Hill testified that he had not released Richardson=s
vehicle to Webster because (1) he needed to perform a search on the vehicle,
(2) Webster did not have a valid driver=s
license, and (3) Richardson did not have the authority to release the vehicle
to Webster because Richardson was not the registered owner.  Finally, Officer Hill testified that Webster
never indicated any ownership over the items in Richardson=s
vehicle, nor did he indicate at any time that he wanted Officer Hill to stop
looking. 

In
addition to Officer Hill=s testimony, Officer Lippens
testified that he had never heard Webster claim any ownership over the items in
Richardson=s vehicle, nor had he heard
Webster ask to leave.  On
cross-examination, Officer Lippens testified that he could not recall if he had
told Webster to cease talking on his cell phone but that if he had it would
have been because of officer safety.








Webster
testified during the hearing that when Officer Hill told him to Ahang
tight,@ he had
not felt as if he was free to leave the scene. 
He also testified that he had told Officer Lippens that he wanted to
leave and take his property with him and that the officers had not asked for
his permission to search his property. 
When asked about sitting in the patrol unit, Webster testified that the
door had been closed and that he had been unable to get out. Finally, Webster
testified that, of the items found in the vehicle, he owned the computer
equipment, the clear plastic box, some of the bags of clothing found in the
trunk, and the wooden box, and that he had assumed control over the red folder,
which belonged to his girlfriend. 

After
taking the matter under consideration, the trial court denied Webster=s motion
to suppress, and it entered the following pertinent findings of fact and
conclusions of law.  

Findings
of Fact

1.  [Webster] was a passenger in
the car and had no ownership interest in the car.

 

2.  [Webster=s] presence had no
bearing on the search of the car or for the justification for the search of the
car.

 

3.  [Webster] did not tell the
police officers at the scene that he wanted to leave the scene with various
property that he claimed belonged to him. 
[Webster=s] testimony on this
subject is not credibleCthe testimony of the
police officers on this subject is credible.








4.  The police had no reason to
suspect that the property at issue was not associated with the car.

 

. . .

 

10.  Roughly three minutes after
Officer Hill was notified of a warrant against the driver, the officer learned
that [Webster] had no outstanding warrants, that his Texas driver=s license had been
suspended, and that his claim of having a valid Oklahoma driver=s license could not be
verified.  Officer Hill reasonably
believed that if he released the car to [Webster], [Webster] would be operating
a vehicle while his license was suspended. 
[Webster] overheard that his identity check came back clear, i.e., no
outstanding warrants.

 

. . .

 

13.  Once the driver had been
arrested, police removed [Webster] from the car and conducted a brief pat-down
for officer safety. [Webster] walked off camera without a police escort.

 

14.  [Webster] could have left
the scene had he asked to do so. Police allowed him to sit in a squad car to
escape the cold temperature, and the door was open while he waited there.
[Webster=s] testimony to the
contrary is not credible.  Specifically,
[Webster] did not ask to leave.  The
officers= testimony on this
subject is credible. 

 

. . .

 

        Conclusions of Law

 

1.  [Webster] has no standing to
complain of the search of the car in which he was a passenger and in which he
had no ownership interest.  Moreover, the
search of the car did not depend upon the detention of [Webster], so he has no
standing to complain of its search based on his own detention.  

 








2.  Since [Webster] did not
assert an ownership interest in any property inside the car during the stop,
and since the police had no reason to suspect any of the property was not
associated with the car, [Webster] has no standing to complain of the search of
the property he now alleges was his.

 

. . .

 

6.  [Webster] and [the] driver
were seized and detained by the traffic stop, but such detentions were never
prolonged past what was required for police to complete [their] investigation
and therefore never became illegal . . .

 

7.  [Webster] has no standing to
complain that the search of the driver=s car exceeded the scope of the driver=s consent.

 

. . . 

 

C.  Trial on the Merits 

During a
trial on the merits, Officer Hill, Officer Lippens, and Webster provided
similar testimony as that provided during the suppression hearing.  At the close of evidence, Webster requested
that the jury charge include the following instruction:

Bearing these instructions in mind, if you find that the defendant
asked the police officers, or somehow communicated to the police officers, that
he wanted to leave the scene with his property before the search of the driver=s seat of the vehicle,
and the defendant would have in fact left the scene if it were not for the
officer=s conduct, or you have a
reasonable doubt thereof, then you must not consider the evidence obtained from
the defendant=s person or property[,]
and will not consider such evidence for any purpose whatsoever. 

 








The trial court denied Webster=s
requested instruction, but it granted him an article 38.23 instruction as to
property found on his person.[2]

At the
close of trial, the jury found Webster guilty of fraudulent possession of
identifying information, and the trial court sentenced him to forty years=
confinement.  This appeal followed.

III.  Motion to Suppress

In his
first point, Webster argues that the trial court erred by denying his motion to
suppress because he was unlawfully detained under the Fourth Amendment of the
United States Constitution.

A.  Standard of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We give almost total deference to a trial
court=s
rulings on questions of historical fact and application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor, but we review
de novo application-of-law-to-fact questions that do not turn on credibility
and demeanor.  Amador, 221 S.W.3d
at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002). 

Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede v. State, 214 S.W.3d 17, 24
(Tex. Crim. App. 2007); State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim.
App. 2006).  When the trial court makes
explicit fact findings, we determine whether the evidence, when viewed in the
light most favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19.  We then review the trial court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.








In
determining whether a trial court=s
decision is supported by the record, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather
than evidence introduced later.  See
Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal
v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519
U.S. 1043 (1996).  But this general rule
is inapplicable when the parties consensually relitigate the suppression issue
during the trial on the merits.  Gutierrez,
221 S.W.3d at 687; Rachal, 917 S.W.2d at 799.  If the State raised the issue at trial either
without objection or with subsequent participation in the inquiry by the
defense, the defendant is deemed to have elected to re‑open the evidence,
and we may consider the relevant trial testimony in our review.  Rachal, 917 S.W.2d at 799.  Here, although Webster objected to all of the
evidence recovered from the vehicle on Fourth Amendment grounds, he did not
object to Officer Hill=s testimony pertaining to the
stop and investigation.  Nor did the
State object when Webster testified about the circumstances of his alleged
detention.  Therefore, we will consider
both the evidence presented at the suppression hearing and the evidence
presented at trial.

B.  The Fourth Amendment








The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede v. State, 214 S.W.3d at 24. 
To suppress evidence because of an alleged Fourth Amendment violation,
the defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672.  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable.  Id. at 673; Torres v. State,
182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d
488, 492 (Tex. Crim. App. 2005).

C.  Standing to Challenge the Stop 

Before
we can address whether Webster=s Fourth
Amendment rights were violated, we must first assess whether Webster has
standing to complain about the search and seizure of the items taken from
Richardson=s vehicle.  Webster has standing to contest the search
only if he had a reasonable personal expectation of privacy that he claims was
violated.  Kothe v. State, 152
S.W.3d 54, 59 (Tex. Crim. App. 2004).








Proof of
Aa
reasonable expectation of privacy@ is at
the forefront of all Fourth Amendment claims.  Id. 
Any defendant seeking to suppress evidence obtained in violation of the
Fourth Amendment must first show that he personally had a reasonable
expectation of privacy that the government invaded.  See Rakas v. Illinois, 439 U.S. 128,
139, 99 S. Ct. 421, 428 (1978) (noting that issue of standing involves two
inquiries:  first, whether defendant has
alleged an Ainjury in fact@; and
second, Awhether
the proponent is asserting his own legal rights and interests rather than
basing his claim for relief upon the rights of third parties@); see
also Alderman v. United States, 394 U.S. 165, 174, 89 S. Ct. 961, 965B67
(stating AFourth Amendment rights are
personal rights which, like some other constitutional rights, may not be
vicariously asserted.@).  In other words, he must prove that he was a Avictim@ of the
unlawful search or seizure.  Kothe,
152 S.W.3d at 59.  A defendant does not
have standing to complain about the invasion of someone else=s
personal rights.  United States v.
Salvucci, 448 U.S. 83, 84B85, 100
S. Ct. 2547, 2549B50 (1980); Villarreal v.
State, 708 S.W.2d 845, 849B50 (Tex.
Crim. App. 1986), overruled on other grounds by Blake v. State, 971
S.W.2d 451 (Tex. Crim. App. 1998).  Only
after a defendant has established his standing to complain may a court consider
whether he has suffered a substantive Fourth Amendment violation.  See Villarreal v. State, 935 S.W.2d
134, 138 (Tex. Crim. App. 1996); see also United States v. Brazel, 102
F.3d 1120, 1147 (11th Cir. 1997); United States v. Pierce, 959 F.2d
1297, 1303 (5th Cir. 1992).  Although we
defer to the trial court=s factual findings and view them
in the light most favorable to the prevailing party, we review the legal issue
of standing de novo.  State v. Johnson,
896 S.W.2d 277, 285 (Tex. App.CHouston
[1st Dist.] 1995), aff=d, 939
S.W.2d 586 (Tex. Crim. App. 1996); see also United States v. DeLuca, 269
F.3d 1128, 1131 (10th Cir. 2001) (stating that courts review de novo the issue
of whether a defendant has standing to challenge a search).








In
addressing standing, Ait is critical that the precise police
conduct being objected to be properly identified, for this may itself turn out
to be determinative on the standing issue.@  Kothe, 152 S.W.3d at 60.  Here, the State argues that Webster had no
reasonable expectation of privacy in Richardson=s
vehicle.  However, that is not the basis
of his complaint.  Rather, Webster=s Fourth
Amendment claim is based upon an allegedly prolonged detention of himself as
the passenger in Richardson=s
vehicle. 

The
intrusion a vehicle stop causes is personal to those in the car when it
occurs.  United States v. Powell,
929 F.2d 1190, 1195 (7th Cir. 1991) (collecting cases and concluding that
passengers, as well as drivers, have standing to challenge a vehicle stop or
prolonged detention).  Both Webster and
Richardson had a reasonable expectation of privacy in not being detained beyond
the time necessary for Officer Hill to complete his investigation.  Thus, Webster has standing to complain about
any illegally prolonged detention.  See
Brendlin v. California, 551 U.S. 249, 255B56, 127
S. Ct. 2400, 2406 (2007).

Having
determined Webster has standing to challenge the stop, we now review whether
Officer Hill unreasonably prolonged Webster=s
detention after Richardson=s
arrest.        

D.  Unlawful Detention








There
are three basic categories of interaction between police officers and
citizens:  encounters, investigative
detentions, and arrests.  Francis v.
State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996).  An encounter is a friendly exchange of
pleasantries or mutually useful information. 
Id.  In an encounter, a
police officer is not required to possess any particular level of suspicion,
because the citizen is under no compulsion to remain.  Id. 
In an investigative detention (also known as a temporary detention or A Terry‑stop@),
however, the officer must be able to articulate specific facts that, in light
of his experience and personal knowledge, together with inferences from those
facts, reasonably warrant the intrusion on the freedom of the citizen
stopped.  Id.  In other words, to justify a detention, there
must be a reasonable suspicion by the officer that some unusual activity is or
has occurred, that the detained person is connected with the activity, and that
the unusual activity is related to the commission of a crime.  Id. 
An investigative detention is a seizure under which the citizen is not
free to leave, at least for some period of time.  Id. 
The key questions in determining whether an interaction is an encounter
or a detention are whether a reasonable person would have believed he was free
to leave and whether he actually yielded to the officer=s show
of authority.  Id.  It is also important to note that these
differing levels of interaction often flow from one into the next, and
sometimes the lines between them may blur in any given transaction.  See id.  A[W]hat
may begin as a consensual encounter can readily become an investigative
detention, which may evolve into an arrest.@  Id.








Here,
Webster does not challenge the propriety of the initial traffic stop. Instead,
Webster attacks the scope of the detention and asserts that what began as a
consensual encounter quickly moved into an unlawful detention. Specifically,
Webster argues that a reasonable person under similar circumstances would not
have felt free to leaveCthat is, (1) having an officer
say to Ahang
tight,@ (2)
having an officer stand next to the open driver=s side
door to keep watch, (3) being removed from the vehicle and frisked for weapons,
and (4) being placed in the rear seat of a patrol unit.  Webster further argues that because he was
illegally detained, the search of the vehicle violated his Fourth Amendment
rights.  In response, the State contends
Webster was never illegally detained because his detention did not exceed the
time necessary to complete the traffic stop investigation.  And, because the detention was lawful,
Webster, as a passenger in the car, lacks standing to complain of the search.








For
Fourth Amendment purposes, a traffic stop is a seizure and must be reasonable
to be lawful.  Brendlin, 551 U.S.
at 250, 127 S. Ct. at 2403; Davis v. State, 947 S.W.2d 240, 243B45 (Tex.
Crim. App. 1997); Spight v. State, 76 S.W.3d 761, 766 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  A traffic
stop is reasonable if the police officer was justified in making the stop and
his actions during the stop were confined in length and scope to that necessary
to fulfill the purpose of the stop.  Kothe,
152 S.W.3d at 63; Davis, 947 S.W.2d at 242, 243 (citing Terry v. Ohio,
392 U.S. 1, 20, 88 S. Ct. 1868, 1879 (1968)). 
Actions an officer may take within the scope of investigation attendant
to a traffic stop include requesting identification, proof of insurance, and
vehicle registration; checking for outstanding warrants; verifying the vehicle
is not stolen; and asking about the purpose of the trip and intended
destination. United States v. Brigham, 382 F.3d 500, 507B08 (5th
Cir. 2004) (op. on reh=g) (en banc); Kothe, 152
S.W.3d at 63; Spight, 76 S.W.3d at 766; Mohmed v. State, 977
S.W.2d 624, 628 (Tex. App.CFort
Worth 1998, pet. ref=d).  The officer may approach not just the driver
for this information but also any passengers. 
Kothe, 152 S.W.3d at 64 n.36; Duff v. State, 546 S.W.2d
283, 286 (Tex. Crim. App. 1977); Freeman v. State, 62 S.W.3d 883, 888
(Tex. App.CTexarkana 2001, pet. ref=d).  Additionally, the officer may ask the driver
and passengers to step out of the car.  Maryland
v. Wilson, 519 U.S. 408, 410, 117 S. Ct. 882, 884 (1997).  A stop may last no longer than is necessary
to effectuate its purpose, although no rigid time limitation exists on its
length. Kothe, 152 S.W.3d at 63, 64, 65 n.43.













Applying
the above principles to the facts of this case, we conclude the trial court
properly denied Webster=s motion to suppress.  Having lawfully stopped Richardson and
Webster, Officer Hill was authorized to ask Richardson and Webster for
identification, to run a computer check, and to wait for confirmation on
Richardson=s outstanding warrant.  See Kothe, 152 S.W.3d at 64 n.36;
Davis, 947 S.W.2d 240, 244B45.  Further, the evidence shows that Webster
voluntarily answered Officer Hill=s
questions, resulting in a consensual encounter. 
See Duff, 546 S.W.2d at 286 (stating that officers may approach
the passengers in the vehicle and ask them questions so long as the officer
does not attempt to coerce a passenger=s
cooperation). Webster, however, argues that when Officer Hill told him to Ahang
tight,@ and
when Officer Lippens stood watch beside the driver=s side
door, he was being illegally detained.         A
detention following a traffic stop is not illegal as to a driver or passenger
so long as the driver or passenger has not been detained beyond the time
necessary for the officer to complete his investigation.  See Kothe, 152 S.W.3d at 61.  At the point in the stop when Officer Hill
told Webster to Ahang tight@ and
when Officer Lippens stood watch over the vehicle, the initial traffic stop
investigation was still ongoingCthat is,
Officer Hill had not yet received confirmation on Richardson=s
warrant.  See id. at 63B64; see
also Powell v. State, 5 S.W.3d 369, 378B79 (Tex.
App.CTexarkana
1999, pet. ref=d) (stating that a traffic stop
investigation is not fully resolved until a computer check is completed; the
officer knows that the driver has a currently valid license, no outstanding
warrants, and the car is not stolen; and that the officer issues either a
citation or warning).  Thus, Officer Hill=s and
Officer Lippens=s actions were within the scope
of the investigation attendant to the traffic stop and, therefore, were reasonable
as a matter of substantive Fourth Amendment law. See Brigham, 382 F.3d
at 507B08; see
also Cunningham v. State, 11 S.W.3d 436, 440 (Tex. App.CHouston
[14th Dist.] 2000, no pet.) (stating that an officer who makes a valid traffic
stop may take appropriate measures to guarantee his safety).








The
evidence also shows that, while the traffic stop investigation was still
ongoing, Officer Hill requested permission from Richardson to search the
vehicle and that consent to do so was voluntarily given.  See Guerrero v. State, No.
04-04-00684-CR, 2005 WL 2438315, at *2 (Tex. App.CSan
Antonio Oct. 5, 2005, no pet.) (mem. op., not designated for publication)
(stating that merely requesting such consent does not amount to an unlawful
seizure, and neither probable cause nor reasonable suspicion is required for
the officer to ask). Officer Hill, therefore, was authorized to act upon the consent
given him.  See Schneckloth v.
Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (stating that an
established exception to both the warrant and probable cause requirements is a
search conducted pursuant to valid consent). 
It reasonably falls within the scope of that consent to ask persons in
the vehicle to exit it so that the search can be conducted.  See Rhodes, 945 S.W.2d at 118B19
(holding that asking passengers to step outside the vehicle is not an
unreasonable intrusion of their Fourth Amendment rights).  Consequently, it was reasonable for Officer
Hill to remove Webster from the vehicle in order to conduct a search of the
vehicle.  See id.[3]  Further, Officer Hill=s
decision to frisk Webster for weapons after removing him from the vehicle was
also reasonable under the circumstancesCthat is,
Webster=s
proximity and association with an individual listed as Aarmed
and dangerous.@ 
See Cunningham, 11 S.W.3d at 440 (stating that an officer who
makes a valid traffic stop may take appropriate measures to guarantee his
safety); see also Balentine v. State, 71 S.W.3d 763, 769 (Tex. Crim.
App. 2002) (stating that A[t]he officer need not be
absolutely certain that an individual is armed; the issue is whether a
reasonably prudent person would justifiably believe that he or others were in
danger@).  








Next,
Webster asserts that because Richardson had already been arrested when Officer
Hill asked Webster to step out of the vehicle, the original purpose of the
traffic stop investigation had been resolved and he, therefore, should have
been free to leave.  We agree.  Webster, however, claims that he was still
being detained because the officers placed him into a patrol unit and closed
the door.  Webster also asserts that he
asked to leave with his property and was told by the officers that he could not
leave.  








The
evidence, however, shows that although neither Officer Hill nor Officer Lippens
told Webster that he could leave, they also never told him that he was being
detained.  See Ohio v. Robinette,
519 U.S. 33, 39B40, 117 S. Ct. 417, 421 (1996)
(stating that there is no requirement to inform a detainee he is free to leave
after a lawful traffic stop).  Further,
the video from Officer Hill=s patrol
unit shows that, after being frisked, Webster walked away without a police
escort.  See Moreno v. State, No.
07-07-0477-CR, 2009 WL 1361594, at *2 (Tex. App.CAmarillo
May 14, 2009, no pet.) (concluding that appellant=s
freedom to move around discredited his contention that he was being detained).  And, to the extent that Webster relies on his
own testimony to undermine the officers=
testimonies as to:  (1) whether it was an
option to sit in the patrol unit, (2) the patrol unit=s door
being opened or closed, and (3) whether he asked to leave with his property or
asserted ownership over any of the items in the vehicle, we defer to the trial
court on issues of credibility.  See
Amador, 221 S.W.3d at 673; Estrada, 154 S.W.3d at 607; Johnson,
68 S.W.3d at 652B53.  Thus, based on the totality of the
circumstances viewed in the light most favorable to the trial court=s
factual findings, we conclude that (1) the officers= conduct
up to Richardson=s arrestCthat is,
the end of the traffic stop investigationCwas
reasonable and (2) the officers= conduct
after Richardson=s arrest did not result in an
unlawful detention.  

Having
concluded that the initial traffic stop was neither illegal nor unlawfully
extended to render it unreasonable, we turn to the State=s
argument that Webster, as a passenger in the car, lacked Astanding@ to
complain of the search.  

E.  Standing to Challenge the Search      

A  passenger may challenge the legality of a
search of the vehicle in which he was riding so long as the search resulted
from an infringement on  his Fourth
Amendment rights.  Lewis v. State,
664 S.W.2d 345, 348 (Tex. Crim. App. 1984); Stone v. State, 147 S.W.3d
657, 659 (Tex. App.CAmarillo 2004, pet. ref=d).  In other words, he must show that the initial
detention leading to the search was illegal, his removal from the car was
unreasonable, or he had a possessory interest in the car itself or the items
seized from the car. Kothe, 152 S.W.3d at 61; Hughes v. State, 24
S.W.3d 833, 838 (Tex. Crim. App. 2000); Lewis, 664 S.W.2d at 348.








Here,
because the detention was neither illegal nor unlawfully extended to render it
unreasonable, Webster may challenge the legality of the search only upon a
showing that his removal from the car was unreasonable or that he had a
possessory interest in the vehicle itself or the items seized from the
vehicle.  See Kothe, 152 S.W.3d at
61; Hughes, 24 S.W.3d at 838; Lewis, 664 S.W.2d at 348.  Webster, however, makes none of these
assertions.[4]  His sole argument as to standing is based on
the lawfulness of the detention.  As
such, we conclude that Webster cannot challenge the legality of the search.
Accordingly, we overrule Webster's first point.   

IV. 
Jury Instruction








In his second
point, Webster asserts that the trial court erred by denying his requested jury
instruction on the legality of the search that led to the discovery of the
evidence seized from Richardson=s vehicle.  See Tex. Code Crim. Proc. Ann. art.
38.23.  However, having concluded that
Webster=s rights were not
infringed by an illegal detention and given Webster makes no argument that his
removal from the vehicle was unreasonable or that he had a  possessory interest in the items seized, we
conclude Webster lacks the capacity to complain of the denial of his requested
jury instruction.  See Walter v. State,
28 S.W.3d 538, 540B41 (Tex. Crim. App. 2000) (capacity to
claim protection of Fourth Amendment depends upon whether legitimate
expectation of privacy exists in Ainvaded place@); Lewis,
664 S.W.2d at 348; see also Guy v. State, No. 05-07-00733-CR, 2008 WL
3984051, at *8 (Tex. App.CDallas Aug. 28, 2008, pet. ref=d) (not designated
for publication) (holding that appellant was not entitled to requested article
38.23 instruction based on the same conclusions and reasoning presented
here).  Accordingly, we overrule Webster=s second point.

V. 
Conclusion

Having
overruled both of Webster=s points, we affirm the trial
court=s
judgment.

 

PER CURIAM       

PANEL:  MCCOY, WALKER, and
MEIER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: March 25, 2010

 

 











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim. Proc.
Ann. art. ' 38.23(a) (Vernon 2005)
(providing that A[n]o evidence obtained by
an officer or other person in violation of any provisions of the Constitution
or laws of the State of Texas, or of the Constitution or laws of the United
States of America, shall be admitted in evidence against the accused on the
trial of any criminal case.@).

 





[3]It was also reasonable to
remove Webster from the vehicle because Richardson had been arrested and
Webster did not have his driver=s license with him.  Thus, the officers were not authorized to
release the vehicle to Webster.





[4]To the extent Webster
claims that he exerted a possessory interest over the items seized from the
vehicle, we defer to the trial court on issues of credibility.  Furthermore, Webster does not provide any
citation to legal authority nor does he provide any legal analysis in support
of his claim that he exerted a possessory interest over the items seized from
the vehicle.  Thus, he presents nothing
for our review on this issue.  See
Hankins v. State, 132 S.W.3d 380, 385 (Tex. Crim. App.), cert. denied,
543 U.S. 944 (2004).